UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————— x

RICHARD ZECHER, ROBERT YADEGAR,   :   Civil Action No. 2:18-cv-05072-SJF-AYS
ZECH CAPITAL LLC, Y-GAR CAPITAL   :
LLC, RICHARD N. ZECHER 2010 FAMILY :
TRUST, RICHARD N. ZECHER 2010     :
FAMILY TRUST FOR THE BENEFIT OF    :
EVAN GREGORY ZECHER and RICHARD    :
N. ZECHER 2010 FAMILY TRUST FOR    :
THE BENEFIT OF RACHEL JOY ZECHER,  :
                                   :
                    Plaintiffs,    :
                                   :
            vs.                    :
                                   :
VINCE HOLDING CORP., JILL GRANOFF, :
LISA KLINGER, MARK BRODY,          :
BRENDAN HOFFMAN, DAVID STEFKO,     :
MARC J. LEDER, SUN CAPITAL         :
PARTNERS, INC., SUN CARDINAL, LLC, :
SCSF CARDINAL, LLC and SUN CAPITAL :
PARTNERS MANAGEMENT V, LLC,        :
                                   :
                    Defendants.    :
                                   :
——————————————————————— x

ALFRED ZECHER,                     :   Civil Action No. 2:19-cv-05629-SJF-AYS
                                   :
                    Plaintiff,     :
                                   :
            vs.                    :
                                   :
VINCE HOLDING CORP., JILL GRANOFF, :
LISA KLINGER, MARK BRODY,          :
BRENDAN HOFFMAN, DAVID STEFKO,     :
MARC J. LEDER, SUN CAPITAL         :
PARTNERS, INC., SUN CARDINAL, LLC, :
SCSF CARDINAL, LLC and SUN CAPITAL :
PARTNERS MANAGEMENT V, LLC,        :
                                   :
                    Defendants.    :
                                   :
——————————————————————— x

**PLAINTIFFS' OBJECTIONS TO APRIL 14, 2020
REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STATEMENT OF FACTS ........................................................................................3

III.  ARGUMENT ...........................................................................................................8

      A.    Standard of Review..................................................................................8

      B.    Plaintiffs' §10(b) Claims Have Been Sufficiently Pled............................8

            1.    The Amended Complaint Pled Defendants' Fraud with
                  Particularity....................................................................................9

            2.    The R&R Erred in Finding that Plaintiffs Have Not Pled Falsity
                  with Particularity...........................................................................10

            3.    The Amended Complaint Pleads Defendants' Materially False and
                  Misleading Statements and Omissions and Not "Corporate
                  Mismanagement" as Held by the R&R...........................................11

            4.    Plaintiffs Have Sufficiently Pled Materiality................................15

            5.    The R&R Improperly Found that Defendants Disclosed the Risks
                  Associated with Its Use of an Unproven, Untested Beta Version of
                  a Software System.........................................................................17

            6.    The R&R Misconstrued Plaintiffs' Allegations, Failed to Draw
                  Inferences in Favor of Plaintiffs, and Drew Inferences in
                  Defendants' Favor..........................................................................19

            7.    The R&R Erred in Finding that Plaintiffs Did Not Plead Scienter
                  with Particularity...........................................................................21

      C.    Plaintiffs' §20(a) Claims Are Actionable Because Plaintiffs Have Stated a
            Primary Violation of the Securities Laws...............................................23

      D.    Plaintiffs Should Be Afforded the Opportunity to Cure Any Pleading
            Deficiencies............................................................................................23

IV.   CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................9, 20

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988) .................................................................................................16

*C.D.T.S. v. UBS AG,*
   No. 12 Civ. 4924(KBF), 2013 WL 6576031
   (S.D.N.Y. Dec. 13, 2013) ........................................................................................13, 14

*Credit Suisse First Boston Corp. v. ARM Fin. Grp., Inc.,*
   2001 WL 300733
   (S.D.N.Y. Mar. 28, 2001) .......................................................................................12, 18

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2009) ....................................................................................16

*Emps.' Ret. Sys. of Gov't of the Virgin Isl. v. Blanford,*
   794 F.3d 297 (2d Cir. 2015) ....................................................................................11

*Field v. Trump,*
   850 F.2d 938 (2d Cir. 1988) ....................................................................................12, 13

*Galestan v. OneMain Holdings, Inc.,*
   348 F. Supp. 3d 282 (S.D.N.Y. 2018) ....................................................................11

*Gruber v. Gilbertson,*
   2018 WL 1418188
   (S.D.N.Y. Mar. 20, 2018) .......................................................................................14

*In re Crocs, Inc. Sec. Litig.,*
   774 F. Supp. 2d 1122 (D. Colo. 2011) ...................................................................13, 14

*In re Donna Karan Int'l, Inc. Sec. Litig.,*
   1998 WL 637547
   (E.D.N.Y. Aug. 14, 1998) .......................................................................................15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.,*
   986 F. Supp. 2d 487 (S.D.N.Y. 2013) ....................................................................18

*In re Faro Techs. Sec. Litig.,*
   534 F. Supp. 2d 1248 (M.D. Fla. 2007) .................................................................14, 15

**Page**

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  618 F. Supp. 2d 311 (S.D.N.Y. 2009)....................................................................18

*In re Fuwei Films Sec. Litig.*,
  634 F. Supp. 2d 419 (S.D.N.Y. 2009)....................................................................12

*In re MBIA, Inc., Sec. Litig.*,
  700 F. Supp. 2d 566 (S.D.N.Y. 2010)......................................................................9

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  2011 WL 1330847
  (S.D.N.Y. Mar. 30, 2011) ...............................................................................18, 19

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016)....................................................................14

*In re Veon Ltd. Sec. Litig.*,
  2017 WL 4162342
  (S.D.N.Y. Sept. 19, 2017) ......................................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011),
   *aff'd sub nom.*, 838 F.3d 223 (2d Cir. 2016)..................................................16, 17

*Kneitel v. Danchuk*,
  2007 WL 2020183
  (E.D.N.Y. July 6, 2007) ...........................................................................................8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)............................................................................22, 24

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)....................................................................................................8

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d Cir. 2014)...................................................................................12

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)........................................................................9, 21, 22

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019)......................................................................11

- iii -

**Page**

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)...................................................................9, 20

*Sante Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977)............................................................................12, 13

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019).........................................................................16

*Stratte-McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015).........................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................9, 20, 23

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b)...................................................................................................8, 23
   §78t(a)........................................................................................................23
   §78u-4..........................................................................................................8

Federal Rules of Civil Procedure
   Rule 9(b)..............................................................................................8, 9, 10
   Rule 12(b)(6)...................................................................................9, 15, 20
   Rule 15(a)(2)..............................................................................................24
   Rule 72(b)......................................................................................................8
   Rule 72(b)(3)................................................................................................8

17 C.F.R.
   §240.10b-5.............................................................................................8, 13

28 U.S.C.
   §636(b)(1) ....................................................................................................8

## LEGISLATIVE HISTORY

Private Securities Litigation Reform Act of 1995 ("PSLRA")
   Pub. L. No. 104-67, 109 Stat. 737 (1995).......................................8, 9, 10

## I.     PRELIMINARY STATEMENT

Before the Court is the Report and Recommendation ("R&R") of the Honorable Anne Y. Shields, United States Magistrate Judge (ECF No. 36[1]), applicable to both *Richard Zecher, et al. v. Vince Holding Corp., et al.*, No. 2:18-cv-05072 (SJF) (AYS) ("Zecher I") and *Alfred Zecher v. Vince Holding Corp., et al.*, No. 2:19-cv-05629 (SJF) (AYS) ("Zecher II").  The plaintiffs in Zecher I and Zecher II (collectively, "Plaintiffs") allege virtually identical violations of the Securities Exchange Act of 1934 (the "Exchange Act") against Vince Holding Corp. ("Vince" or the "Company") and certain of its former and current officers, directors, and controlling shareholders[2] (collectively referred to as "Defendants") for material misstatements and omissions between March 19, 2015 and May 19, 2017, inclusive (the "Relevant Period").

Both cases focus on Defendants' material misrepresentations and omissions concerning Vince's transition to a new enterprise resource planning ("ERP") platform.  Throughout the Relevant Period, Defendants made false and misleading statements about the ERP transition and failed to disclose to investors that Vince attempted to develop its new ERP platform based on a beta version of a new type of software system known as Microsoft Dynamics AX-7 (defined below) that was unproven in the marketplace.  Defendants, therefore, misrepresented and failed to disclose material facts about the ERP transition that would have enabled investors to understand that the ERP transition was not going as well as represented, and that the risk of failure was much greater than it would have been had Vince selected an ERP system that was typical for a company such as Vince at

---

[1]     Citations to "ECF No. __" refer to the Zecher I action.

[2]     The additional defendants include Jill Granoff, Lisa Klinger, Mark Brody, Brendan Hoffman, David Stefko, Marc J. Leder (the "Individual Defendants"), Sun Capital, Sun Cardinal, LLC, SCSF Cardinal, LLC, and Sun Capital Partners Management V, LLC (the "Sun Capital Defendants").

the time. Defendants' false and misleading statements and material omissions caused an artificial inflation in the price of Vince common stock.

The R&R recommends that Defendants' Motions to Dismiss in both actions (Zecher I ECF No. 24, Zecher II ECF No. 25) be granted and that the pleadings be dismissed with prejudice, without leave to re-plead. R&R at 2. The R&R also recommends that Plaintiffs' motions to consolidate (Zecher I ECF No. 31, Zecher II ECF No. 19) be denied as moot. Plaintiffs respectively submit the following objections to the portions of the R&R that recommend dismissal of Plaintiffs' claims.

*First*, the R&R erred in finding that Plaintiffs did not plead fraud with particularity (R&R at 19) because the Amended Complaint[3] specifies the statements that Plaintiffs contend were false, identifies the speaker, states where and when the statements were made, and explains why the statements were false. Plaintiffs pled falsity with particularity by describing the insufficiency of Microsoft Dynamics AX-7 based on public, widely-available sources available to Defendants. ¶¶55-57, 60-62. Indeed, Microsoft itself publicly stated that the beta software was not ready to be relied upon as if it were a finished product. ¶61.

*Second*, the R&R erred in stating that Plaintiffs' claims, which related to misrepresentations and omissions concerning Defendants' implementation of a risky, unfinished beta software platform was merely a claim for "corporate mismanagement." R&R at 15. The AC contains detailed allegations that Defendants made numerous positive statements about the development and implementation of the new ERP system while simultaneously concealing that they were developing

---

[3]    "¶__" and "¶¶___" refer to Plaintiffs' Amended Complaint filed on January 28, 2019 in Zecher I (ECF No. 22) (the "AC"). All emphasis is added and internal quotes and citations are omitted unless otherwise specified herein.

the new platform using beta AX-7 technology, as well as the unique risks and implications of that decision.  ¶¶107-190.

*Third*, the R&R erred by finding that the misrepresented and omitted facts were immaterial as a matter of law.  Plaintiffs alleged ample facts demonstrating the importance of the ERP software system to Vince's business and the inherent risks associated with Vince's selections on an unproven beta software platform. ¶¶50, 83-91.

*Fourth*, this case is at the pleading – not the proof – stage.  The allegations, which must be taken as true and in a light most favorable to Plaintiffs, are sufficiently detailed to allow this case to proceed to discovery.  As described below, by basing its finding on whether categorizing statements in favor of Defendants would be "more than fair," the R&R erred in undervaluing Plaintiffs' allegations and failing to give Plaintiffs the benefit of every favorable inference that can be drawn from their allegations.  R&R at 7.

*Finally*, the R&R erred in finding, without any meaningful analysis, that Plaintiffs did not plead scienter with particularity.  R&R at 19.  Plaintiffs specifically alleged that Defendants were aware of the insufficiency of Microsoft Dynamics AX-7, as: (i) Defendant Stefko and other Vince executives were intimately involved in the transition and participated in weekly meetings where discussions about the integration issues took place; (ii) the transition involved the most important aspects of Vince's business and operations; and (iii) Defendants had the motive and the opportunity to commit fraud.  ¶¶212-226.

Plaintiffs respectfully submit that the R&R's errors should be corrected and Defendants' Motions to Dismiss should be denied in their entirety.

## II.     STATEMENT OF FACTS

Vince is a luxury consumer brand company that specializes in high-end apparel, and is majority owned and controlled by Sun Capital Partners, Inc. ("Sun Capital"), a private equity firm,

and its affiliates.  ¶¶3, 41-45, 46, 207-208.  From 2006 to 2013, Vince was a business unit of the Kellwood Company ("Kellwood"), another Sun Capital portfolio company.  ¶3.  In November 2013, the Sun Capital Defendants took Vince public in an initial public offering (the "IPO"), selling ten million shares at $20 per share and generating gross proceeds of $200 million.  *Id*.  Since 2013, Vince shifted its focus from wholesale to retail and e-commerce sales, *i.e.*, its direct-to-consumer segment.  ¶¶47-48.

Before the IPO, Kellwood provided Vince with the administrative and operational support needed to operate its business, including, most importantly, a fully customized ERP platform (the "Kellwood ERP system").  ¶4.  The Kellwood ERP system consisted of the business applications Vince needed to handle all aspects of its retail and direct-to-consumer business.  *Id.*  The data from each software application was "integrated" (*i.e.*, shared) across the ERP system using customized software called "middleware."  ¶¶53, 70.  The Kellwood ERP system, and the middleware which facilitated the integration of Vince's operational data, were critical to Vince's business, operations, and financial prospects.  ¶¶213-214.  After the IPO, Vince continued to rely on the Kellwood ERP system to manage all aspects of its retail operations.  ¶¶5, 70-71, 213-214.  The Shared Services Agreement governing this arrangement provided that Vince would continue using the Kellwood ERP system until Vince implemented its own ERP system, which Vince began planning in fiscal 2014. ¶¶5, 71-72.

Vince's new ERP platform was developed between March 2015 and November 2015 (the "development phase").  ¶¶6, 78.  Unbeknownst to investors, however, Vince had chosen to develop its new ERP system using an unfinished, beta-version of a new type of ERP platform called Microsoft Dynamics AX-7 ("AX-7") that had no track record and had not been relied upon by other retail businesses.  ¶6.  The beta version of the software, which had been released for testing and

development purposes only, was still riddled with bugs and glitches.  ¶7.  As a result, its core feature – the seamless transmission of data across Vince's business – was subject to interruptions and failures, as would be expected of a beta version of a software product.  *Id*.  These types of problems were to be expected by Vince because a beta product by definition is an unfinished product that is not stable or ready to be relied upon by end users.  *See* ¶56 n.2 (explaining that a beta product will likely to contain a number of known or unknown bugs, have speed or performance issues, and may cause crashes or data loss).

While Vince may have expected those problems as a result of its use of an unproven new beta software system, a reasonable investor would have expected that Vince would ***not attempt*** to run its business on a beta version of a software platform but would instead transition its ERP system to a reliable and finished software system.  Defendants, however, never revealed these critical facts about the ERP transition to investors.  Specifically, even though Defendants discussed the ongoing ERP implementation throughout the development phase, they never disclosed any information to suggest they were using the unfinished beta AX-7 software.  *See, e.g.*, ¶¶73, 81, 121, 123, 127.  Accordingly, Defendants' statements conveyed to investors that Vince was gearing up for a routine transition to a system that was comparable to the Kellwood ERP system.

Furthermore, because the AX-7 software lacked reliable integration capabilities, the risk that the Company would experience data integration failures both during and after the transition from the Kellwood ERP system was dramatically heightened compared to a transition to a typical ERP system.  ¶¶107, 112.  During the implementation, the applications that were migrated to the new ERP system would have no reliable means of communicating with the legacy Kellwood ERP system.  ¶¶79, 82.  After the implementation, the applications would have no reliable means of communicating with each other.  ¶83.  Without a reliable data integration system, the transition away

- 5 -

from the Kellwood system was doomed from the start, thus posing a unique risk that was not revealed to investors. It inevitably resulted in disorganization, dysfunction and, ultimately, severe disruptions to Vince's business and operations, including disruptions in processing credit card transactions, delivery delays, cash register malfunctions, loss of customer transactional data, and ultimately loss of sales. ¶¶72-91.

Nevertheless, Defendants made positive statements about the transition to the new system and failed to disclose the risks or unfolding problems to investors. ¶9. Defendants assured investors that the Company was acting "very thoughtfully and prudently" (¶¶73, 74, 109, 110, 220) and would operate with full network redundancies to the Kellwood systems until its new ERP system was "completed and functional." ¶¶74, 123-124. The network redundancies would purportedly provide a safety net to mitigate against the potential risks of a failed ERP implementation. ¶73. This safety net, however, did not exist. As specified in the AC, throughout the Relevant Period, Defendants failed to disclose and misrepresented material adverse facts, which were known to or recklessly disregarded by Defendants that: (1) the Company was developing an ERP system around a new technology that had not been proven; (2) the Company was developing its ERP platform using an unfinished beta-version of AX-7 that had been released for testing and development purposes only; (3) that the Company was not developing middleware to perform the necessary data integration processes; and (4) that the foregoing conduct substantially increased the risk of severe complications during the transition, and the likelihood that Vince's business and results of operations would be adversely affected. ¶112.

Eventually, in a series of startling public disclosures, Vince belatedly acknowledged severe complications with the transition after a number of sales and earnings shortfalls. ¶11. On April 14, 2017, Vince announced that it would be unable to timely file its annual report for the fiscal year

- 6 -

ended January 28, 2017. ¶191. The Company explained that the delay was "related to the transition from Kellwood . . . *and the integration of the Company's new ERP system with its internal business processes and third-party systems[.]*" ¶192. The Company also disclosed that the transition had likely caused one or more weaknesses in its internal controls, which would require Vince to take a material asset impairment charge, and which had caused the Company to run into such severe liquidity challenges that its ability to continue to operate was threatened. *Id.* On this news, the price of Vince stock declined approximately 19%, or $2.29 per share, to close at $9.59 per share on April 17, 2017, the next trading day, on abnormally high trading volume. ¶193.

On April 28, 2017, the Company issued a press release announcing its fourth quarter and year-ended January 28, 2017 financial results (the "FY 2016 Release"). ¶194. The FY 2016 Release revealed that Vince's sales had declined 21.9% to $63.9 million during the quarter and declined 11.3% to $268.2 million for the year, and stated that Vince had posted a staggering net loss of $162.1 million, or $3.28 per share for the quarter, partly as a result of a massive non-cash long-lived asset impairment charge. *Id.* Vince blamed the abysmal performance on problems related to the ERP implementation. *Id.*

That same day, Vince confirmed that it had identified material weaknesses related to its risk assessment controls and the design and maintenance of its critical information systems controls as a result of the Company's botched ERP implementation. Among other things, the Company admitted that it failed to "maintain program change management controls to ensure that information technology program and data changes affecting financial IT applications and underlying accounting records were *tested, approved and implemented appropriately*[.]" ¶195. The price of Vince common stock plummeted in response to the Company's disclosure. Over the course of three

trading days after the Company's disclosures on April 28, 2017, the price of Vince stock declined 72%, or $8.86 per share, and closed at $3.47 per share on May 2, 2017.  ¶196.

Despite Vince's failure and the collapse of its share price, Sun Capital and its affiliates have received hundreds of millions of dollars from the Company and its investors, and Plaintiffs have lost tens of millions of dollars on their Vince investments as a result of Defendants' fraud.  ¶17.

## III.    ARGUMENT

### A.    Standard of Review

In reviewing a Report and Recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1).  Since the recommendation of dismissal concerns a dispositive matter, the standard of review here is *de novo*.  *See Kneitel v. Danchuk*, 2007 WL 2020183, at *1 (E.D.N.Y. July 6, 2007); Fed. R. Civ. P. Rule 72(b).  Plaintiffs respectfully submit that the Court should decline to adopt the Magistrate's recommendations and deny Defendants' motions to dismiss in their entirety.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3).

### B.    Plaintiffs' §10(b) Claims Have Been Sufficiently Pled

To state a claim for securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).  Securities fraud actions are subject to the pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*, which requires plaintiffs to identify "with particularity" the circumstances constituting the alleged fraud.  To satisfy Rule 9(b), the complaint must (1) specify the statements that the plaintiff contends were false; (2) identify the

speaker; (3) state where and when the statements were made; and (4) explain why the statements were false. *See In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 577-78 (S.D.N.Y. 2010); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

On a Rule 12(b)(6) motion, a plaintiff's allegations are presumed to be true, and a plaintiff is entitled to the benefit of every favorable inference that can be drawn from its allegations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). The question is whether a claim is *plausible* and, therefore, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As detailed below, the R&R erred in finding that Plaintiffs did not meet this standard.

## 1. The Amended Complaint Pled Defendants' Fraud with Particularity

The R&R, without any substantive analysis, found that Plaintiffs failed to plead false or misleading statements or omissions with particularity. R&R at 19. Contrary to the R&R's finding, the AC satisfies the applicable pleading standard. The AC particularizes Defendants' materially false and misleading statements and omissions in accordance with Rule 9(b) and the PSLRA by specifically identifying "what" statements are alleged to be false and misleading (*see, e.g.*, ¶¶111, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 135, 143, 153, 157, 159, 165, 169, 175, 177); "who" made the statements (*see, e.g.*, ¶113), including Defendant Granoff (*see, e.g.*, ¶121), Defendant Hoffman (*see, e.g.*, ¶¶157, 163), and Defendant Stefko (*see, e.g.*, ¶¶163, 167); "when" and "where" they were made (*see, e.g.*, on April 14, 2016 in Vince's Form 10-K; ¶¶143, 145, 147); and "why" those statements were materially false and misleading or what material information was omitted (*see, e.g.*, ¶¶112, 113, 115, 117, 119, 121, 123, 125, 127, 129, 131, 135, 143, 153, 157, 159, 165, 169, 175, 177). Specifically, the AC challenges Defendants' statements regarding: (i) the new

ERP system (*see, e.g.*, ¶¶111, 115, 127, 143, 159, 175); (ii) the status of the implementation (*see, e.g.*, ¶¶157, 165, 169); (iii) the use of network redundancies during the implementation (*see, e.g.*, ¶¶111, 127, 135, 169); and (iv) the efficacy of its internal controls (*see, e.g.*, ¶¶125, 153, 177).

### 2. The R&R Erred in Finding that Plaintiffs Have Not Pled Falsity with Particularity

The R&R erred in finding that Plaintiffs failed "to allege with any particularity as to why Vince's statements regarding the Shared Services Agreement were false (much less fraudulent), or when they were made[,]" because the AC meets the pleading requirements imposed by Rule 9(b) and the PSLRA. R&R at 19. Specifically, the R&R erred in stating that "Plaintiffs fail to elaborate on their claims as to the insufficiency of the Microsoft product used[.]" *Id.* Plaintiffs allege the insufficiency of the Microsoft product used, based on public, widely-available sources available to Defendants. ¶¶55-57, 60-62.

For example, Plaintiffs alleged that Microsoft itself did not condone the development of platforms around the beta AX-7 technology, with Microsoft Chief Technology Officer, Mike Ehrenberg, stating in a March 2015 interview with *InformationWeek.com*, that "a few customers had moved into production without awaiting Microsoft's blessings," and explaining that the technology was just not ready. ¶57. An article on *MSDynamicsWorld.com*, from November 29, 2015, claimed that the platform was still under development, and "a significant amount of work remained to shore up the new AX for real consumers." ¶60. Further, a March 8, 2016 *Fortune* article explained that a flawed ERP system based on AX-7 could substantially disrupt a company's operations, stating, "[w]ith this AX release, Microsoft rebuilt the product for the cloud. . . . That's important because if there's one thing business customers don't want to take chances on, it is their accounting application, aka enterprise resource planning (or ERP) software. This is the stuff that runs their ledgers and tracks inventory. If it screws up, products may not get made and people may not get paid." ¶62.

Additionally, Microsoft released a preview of AX-7 on December 2, 2014, encouraging companies to download the system for testing and development purposes *only*. ¶¶55-56. When the public beta version of AX-7 was released in December 2015, users were again encouraged to download and operate the new system in trial mode because it was not ready to be relied upon as if it was a finished product. ¶61.

Further, the allegations in the AC "are based upon the investigation conducted by and under the supervision of Plaintiffs' counsel, which included interviewing former Vince employees and reviewing and analyzing information from numerous public and proprietary sources . . . in order to obtain the information necessary to plead Plaintiffs' claims with particularity where necessary." ¶22. No more is required at this stage of the litigation. *See Emps.' Ret. Sys. of Gov't of the Virgin Isl. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) ("[T]he PSLRA does not require confidential sources to be named in the complaint."); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) (plaintiffs are not required to rely upon confidential witnesses); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 302 (S.D.N.Y. 2018).

### 3. The Amended Complaint Pleads Defendants' Materially False and Misleading Statements and Omissions and Not "Corporate Mismanagement" as Held by the R&R

The R&R incorrectly characterizes Plaintiffs' claims as "nothing more than, at best, corporate mismanagement." R&R at 17. According to the R&R, the AC "seeks to find fraud based upon the particular cloud-based Microsoft system chosen by Vince when transitioning from the technology provided by Kellwood[,]" and "alleges only Plaintiffs' disagreement as to Vince's corporate management and fails to set forth any material non-disclosures." R&R at 17, 19. The R&R reaches this faulty conclusion by mischaracterizing Plaintiffs' claims and misapplying case law. R&R at 15-18.

For example, the R&R mischaracterizes the AC by stating that Plaintiffs "focus[ed] on Vince's decision to use Microsoft's cloud-based Dynamics AX System as its ERP solution" (R&R at 11), and "[i]n particular . . . quarrel with the decision to use the Microsoft Dynamics AX ERP system[.]" R&R at 16. Contrary to the R&R, Plaintiffs do not "quarrel" with Defendants' decision about the software solution Vince selected. The AC does not claim that Defendants violated the securities laws because of the software system they chose. Rather, it alleges that Defendants did not **disclose** full and truthful facts about that software selection, the ERP transition, and the resultant negative impact on Vince's business. *See Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth."); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 439 (S.D.N.Y. 2009) ("When a corporation does make a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate.").

Vince was free to select whatever software solutions it deemed appropriate, but once it selected a solution that was outside the realm of what a reasonable investor would have expected, and made public statements about the ERP transition, Defendants were required to provide sufficient details to enable investors to properly evaluate the risks to Vince's business. *See Credit Suisse First Boston Corp. v. ARM Fin. Grp., Inc.*, 2001 WL 300733, at *8 (S.D.N.Y. Mar. 28, 2001) (defendants are not sheltered from liability if they "fail to disclose hard facts critical to appreciating the magnitude of the risks described").

Furthermore, the R&R attempts to support its holding that the AC alleges inactionable mismanagement by citing to cases that are inapplicable to Plaintiffs' claims here, so the R&R's reasoning should not be adopted by the Court. R&R at 15, 17-18. The R&R cited to *Sante Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) and *Field v. Trump*, 850 F.2d 938, 948 (2d Cir.

1988) and stated, it is "critical to note that it has long been held that allegations that amount to nothing more than corporate mismanagement do not constitute the type of conduct sufficient to support a claim of securities fraud." R&R at 15. Neither case is applicable to the facts here because they centered on conduct amounting to breaches of fiduciary duty that were alleged to violate Rule 10b-5. *Santa Fe* involved claims that minority shareholders were not furnished with all of the relevant information in a merger, and the court was concerned about bringing "established state policies of corporate regulation" within Rule 10b-5 because it was "traditionally left to state regulation." 430 U.S. at 478-79. The court in *Santa Fe* stated, "[m]anipulation is 'virtually a term of art when used in connection with securities markets,' referring to practices that are intended to mislead investors by artificially affecting market activities, ***none of which was involved here***." *Id.* at 463-64 (emphasis added). It was within this context that the court stated that Rule 10b-5 was not intended to apply in situations of "corporate mismanagement such as this, ***in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary***." *Id.* at 476 (emphasis added). In contrast, Plaintiffs here allege that Defendants made materially false and misleading statements about the ERP transition which caused the artificial inflation of Vince common stock. ¶¶107-190.

*Field v. Trump*, also cited in the R&R (R&R at 15), is similarly misapplied, as it simply clarified that the "corporate mismanagement" involved conduct associated with a tender offer forming the basis of a breach of fiduciary duty claim. 850 F.2d at 948 ("[a]llegations that a defendant failed to disclose facts material only to support an action for breach of state-law fiduciary duties ordinarily do not state a claim under the federal securities laws").

The R&R cites *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1146 (D. Colo. 2011) and *C.D.T.S. v. UBS AG*, No. 12 Civ. 4924(KBF), 2013 WL 6576031, at *7 (S.D.N.Y. Dec. 13, 2013) in

support of its statement that "Second Circuit precedent clearly bars such business decisions from the scope of conduct that must be disclosed to avoid securities fraud liability." R&R at 17. First, *In re Crocs* is from the District of Colorado, so it plainly does not demonstrate what "Second Circuit precedent clearly bars." *Id*. While the court in *In re Crocs* found that the plaintiffs' claims amounted to mismanagement as opposed to fraud, that discussion was in the context of the court's analysis of the plaintiffs' scienter allegations. 774 F. Supp. 2d at 1146-47. Here, as discussed below, the R&R failed to address Plaintiffs' scienter allegations.

      *C.D.T.S.* is distinguishable because it involved a "rogue trader" that caused a significant loss at defendant UBS AG, and the court rejected the plaintiffs' attempt to repackage a mismanagement claim as a securities law violation. 2013 WL 6576031 at *7. The court in *C.D.T.S.* found that the plaintiffs' general and conclusory allegations were "more akin to a claim of mismanagement than of fraud." *Id*. Here, the AC challenges a large number of Defendants' statements about the IT transition and explains why those statements were materially false and misleading. Therefore, the R&R's statement, "[e]ven assuming the truth of Plaintiffs' allegations regarding the use of a beta version of the Microsoft product (an allegation that is disputed by Vince), Plaintiffs fail to state a claim[,]" is unsupported by the cited cases. R&R at 17.

      Contrary to the reasoning in the R&R, the "critical consideration" here is not whether the alleged omissions can be characterized as "corporate mismanagement," it is "whether the alleged omissions . . . are sufficiently connected to defendants' existing disclosures to make those public statements misleading." *Gruber v. Gilbertson*, 2018 WL 1418188, at *10 (S.D.N.Y. Mar. 20, 2018) (citing *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016)). Even if Defendants can also be categorized as "poor managers," what matters is whether Plaintiffs sufficiently alleged that they were "dishonest ones." *See In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1263 (M.D.

Fla. 2007).  Accordingly, even if Defendants' conduct can be deemed mismanagement, this "will not preclude a claim under the federal securities laws if the[y] . . . failed to disclose a specific material fact resulting from that mismanagement."  *In re Donna Karan Int'l, Inc. Sec. Litig.*, 1998 WL 637547, at *10 (E.D.N.Y. Aug. 14, 1998); *accord In re Veon Ltd. Sec. Litig.*, 2017 WL 4162342, at *8 (S.D.N.Y. Sept. 19, 2017) (allegation that company's "disclosures regarding the existence and efficacy of those controls were false" was not barred by the corporate mismanagement doctrine).

Plaintiffs satisfy this requirement, as the AC alleges that Defendants made numerous statements about the development and implementation of the new ERP system while simultaneously concealing that they were developing the new platform using a beta version of AX-7 technology which created substantial risks for Vince.  ¶¶107-190.  For example, on March 19, 2015, Defendant Granoff stated, "[d]uring this migration, we will incur incremental transition costs, as we run dual systems for a period of time to ensure a smooth migration with minimal disruption."  ¶107.  The statement was materially false and misleading when made because Defendant Granoff knew, or recklessly disregarded, among other things, that there were numerous undisclosed risks associated with the transition to this untested system, including the risk that redundancies would not function correctly.  ¶108.  Additionally, Defendant Granoff lacked a reasonable basis to represent that the transition would be "smooth" with "minimal disruption," since the Company was utilizing a beta version of a new, unfinished platform that was expected to have bugs.  *Id.*

### 4.    Plaintiffs Have Sufficiently Pled Materiality

The R&R erred by holding as a matter of law that the alleged misrepresentations and omissions were not material.  R&R at 18.  According to the R&R, "information regarding purchase and use of particular software does not fall into the category of information that an investor would consider important in deciding whether to buy or sell shares of stock."  *Id.*  Materiality, however, is a "mixed question of law and fact," therefore, "in the context of a Fed. R. Civ. P. 12(b)(6) motion, a

- 15 -

complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).

The R&R mischaracterizes the disclosures sought by Plaintiffs as "going into the weeds of particular software decisions[.]" R&R at 18.  Plaintiffs did not claim that Vince necessarily needed to disclose every detail of the software.  Rather, Plaintiffs alleged that once Vince chose to disclose facts concerning the IT transition, it was under a duty to disclose full and complete information about the transition.  ¶¶9, 82, 107-190, 201-206.  Vince's use of a beta version of an untested and unproven software system, rather than a completed system, created a much greater risk of failure with a substantial, foreseeable impact on Vince's business.  The materiality of Defendants' statements about the IT transition is highlighted by Defendants' repeated discussion of the ERP transition as well as the substantial impact the problems with the transition had on Vince's operations.  ¶¶50, 83-91.  As a result, Vince's use of unfinished beta software is material, as it would have altered the total mix of information and "'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'" *ECA, Local 134*, 553 F.3d at 197 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988)).

The R&R also cited to *Singh v. Cigna Corp.*, 918 F.3d 57, 61 (2d Cir. 2019) to support its materiality holding, but that case in inapplicable here.  *Singh* challenged statements about the company defendant's regulatory compliance and held that those statements were inactionable puffery.  *Id*. at 63.  Here, the statements challenged by Plaintiffs are not puffery since they were factual and descriptive of the ERP transition and were of interest to a reasonable investor.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 573 (S.D.N.Y. 2011), *aff'd sub nom.*,

- 16 -

838 F.3d 223 (2d Cir. 2016) (holding that statements regarding Vivendi's "sound financial footing," were not puffery because they were supported by specific statements of fact regarding Vivendi's resources and financial condition).

Plaintiffs allege ample facts demonstrating the importance of a working software system to Vince's business.  ¶¶50, 83-91.  Moreover, a reasonable investor would have expected Defendants to choose an ERP system with similar capabilities as the Kellwood system, rather than an unfinished software platform.  Indeed, commentators called AX-7 "a major departure from many of the traditional conventions of enterprise resource planning technology," and stated that the AX-7 technology was so different than previous ERP systems that "you might have a hard time recognizing it."  ¶60.

### 5.    The R&R Improperly Found that Defendants Disclosed the Risks Associated with Its Use of an Unproven, Untested Beta Version of a Software System

The R&R incorrectly held that Vince adequately disclosed all material facts concerning the ERP systems transition and was wrong on both the law and the application of the facts to the law.  R&R at 16-17.  A key portion of the R&R stated, in pertinent part, as follows:

> Importantly, Vince warned investors, in each and every SEC public filing and press release, that this transition of critical support services might not be smooth.  Thus, Vince repeated that the implementation and migration of Kellwood's systems to its own might materially harm Vince's business, financial condition, results of operation, and cash flow.

*Id*. at 16.  Plaintiffs do not dispute that Vince's SEC documents described some facts concerning the transition and contained general language about potential negative consequences.  And the R&R is wrong that Vince's disclosures "regarding the possible negative effects that might be associated with the transition of services from Kellwood to Vince *make it impossible* for Plaintiffs to argue that Vince made some sort of misrepresentation regarding that transition."  *Id*. at 17 (emphasis added).  According to the R&R:

- 17 -

> [a]ny such argument must be rejected as it puts Plaintiffs in the position of arguing that Vince warned of a possible negative event, and when that event occurred, the warning itself amounted to fraud.  This is precisely the type of argument specifically rejected by the Second Circuit.  *See Singh*, 918 F.3d at 59-60 (rejecting securities fraud claim based upon disclosure of importance of regulatory compliance, followed by regulatory violations).

*Id*.

The R&R is in error and is inconsistent with both the facts as alleged by Plaintiffs and the established case law.  First, Vince did not disclose the facts alleged by Plaintiffs to have been misrepresented or omitted.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 2011 WL 1330847, at *8 (S.D.N.Y. Mar. 30, 2011) (party may not rely on generic disclaimer where it is aware of actual danger or "cause for concern").  Even though Vince may have disclosed some facts concerning the potential consequences of problems with the IT transition, Vince's disclosures were insufficient because they did not address the unique risks created by the Company's efforts to develop and implement an ERP system using beta AX-7 technology.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 322 (S.D.N.Y. 2009) (cautionary language must be specific, prominent, and must directly address the specific risk that plaintiffs claim was not disclosed, especially considering that most, if not all securities offerings contain cautionary language); *Credit Suisse*, 2001 WL 300733, at *8.

Furthermore, as alleged by Plaintiffs, Defendants knew, or recklessly disregarded – at the time of their statements - that there was a substantial likelihood that there would be problems or that those problems had already begun.  ¶¶112, 203, 206.  *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 514 (S.D.N.Y. 2013) (holding that a registration statement that warned investors of factors that "may negatively affect [Facebook's] revenue" was materially false and misleading because those factors "already had a negative impact on the Company's revenues");

*Merrill Lynch*, 2011 WL 1330847, at *8 (party may not rely on generic disclaimer where it is aware of actual danger or "cause for concern").

Second, the R&R inappropriately pointed to statements made during April 2017 in support of its reasoning that Vince disclosed all necessary facts. R&R at 6-7. Those statements were made at the end of the Relevant Period and are alleged by Plaintiffs to have partially disclosed the fraud. ¶¶11-13, 106, 191-196, 230-231.

Third, the R&R conflates the disclosure of potential consequences of a troubled ERP transition with the disclosure of facts that would enable investors to evaluate the probability that the consequences would occur. R&R at 5-7. The R&R ignores that a reasonable investor would have expected Vince to have used a software system that was reasonable under the circumstances and not an untested beta software that was expected by definition to have problems. ¶56. Although investors may have been aware that there were risks associated with the migration to a new ERP system, a reasonable investor would have expected Vince to work within normal and customary practices by transitioning to an ERP system that was ready for use (as opposed to testing) by the developer's customers.

> **6.** **The R&R Misconstrued Plaintiffs' Allegations, Failed to Draw Inferences in Favor of Plaintiffs, and Drew Inferences in Defendants' Favor**

The R&R failed to give adequate weight to Plaintiffs' allegations, drew inferences in favor of Defendants, and gave too much weight to facts not in dispute or to statements not alleged to be materially false or misleading. The R&R failed to view the facts in a light most favorable to Plaintiffs and applied the wrong standard when stating, "[i]n sum, it is more than fair to summarize Vince's public filings, after the IPO and prior to 2017, as informing investors of the Shared Services Agreement, the proprietary nature and importance of the systems provided pursuant thereto, and the possible negative financial impact that might be associated with Vince's transition to its own ERP

systems." R&R at 7.  On a Rule 12(b)(6) motion, a plaintiff's allegations are presumed to be true, and a plaintiff is entitled to the benefit of every favorable inference that can be drawn from its allegations. *See Tellabs,* 551 U.S. at 322; *Roth*, 489 F.3d at 510.  The question is whether Plaintiffs' claim is plausible and, therefore, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft*, 556 at 678.  The R&R fails to apply the correct standard by basing its finding on whether categorizing statements in favor of Defendants would be "more than fair," and undervaluing Plaintiffs' allegations that the transition to a system based on new and untested technology presents distinct risks beyond those inherent in an ordinary transition.  R&R at 7.

Furthermore, in support of its holding that Defendants adequately disclosed facts concerning the transition, the R&R pointed to statements made by Defendants towards the end of the Relevant Period that partially revealed Defendants' fraud.  *Id*. at 6-7.  For example, the R&R states, "information provided to investors was not always positive," but then limits those examples to the Company's disclosures in April 2017, when Vince "advised investors that it was delaying the release of its financial results," Defendant Hoffman described "integration difficulties" with the IT migration and discussed "correcting system deficiencies."  *Id*. at 6.  The R&R's focus on statements not in dispute or that Plaintiffs allege are partial disclosures of the fraud to support its finding that Defendants made adequate disclosures should be disregarded as a misapplication of the facts to the law.

The R&R, when referencing articles alleged in Complaint, fails to draw inferences in Plaintiffs' favor, inappropriately draws inferences in favor of Defendants, and ignores portions of articles that support Plaintiffs' allegations.  For example, the R&R discusses the March 17, 2015 *InformationWeek.com* article in which a Microsoft employee commented that "a few customers" had

moved into production "without awaiting Microsoft's blessings" (¶57), but fails to draw the inference that those customers had prematurely moved into production or recognize Plaintiffs' allegation that the "technology was just not ready." (*Id.*).  R&R at 7.  The R&R discusses the November 29, 2015 article on *MSDynamicsWorld.com* (*Id*. at 7-8) but fails to recognize Plaintiffs' allegation based on the article that the "platform was still under development" and that a "significant amount of work remained to shore up the new AX for real consumers."  ¶60.

The R&R also discussed the March 8, 2016 *Fortune.com* article concerning the importance of an ERP system working well, and then stated, "[w]hat the article does not say is that customers, would indeed, be taking a chance on their business if they signed up for the Microsoft product." R&R at 8.  However, because the article discussed Microsoft's public release version of AX, not the unfinished beta version that Plaintiffs allege Vince used to operate its business (¶¶7, 62), the R&R misapprehended Plaintiffs' allegations.  Further, the R&R inappropriately drew an inference in favor of Defendants based on the fact that Microsoft did not criticize its own software product.

### 7.    The R&R Erred in Finding that Plaintiffs Did Not Plead Scienter with Particularity

The R&R also erred in its application of the facts and legal standard when it stated that Plaintiffs failed to elaborate on "the Defendants' knowledge" of the insufficiency of the Microsoft product used.  R&R at 19.  A plaintiff may satisfy the scienter requirement by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015).  Thus, contrary to the R&R, "knowledge" is not required.  To sustain a recklessness claim, plaintiffs may either "specifically allege[] defendants' knowledge of facts or access to information contradicting [defendant's] public statements," or allege defendants "failed to check information they had a duty to monitor." *Novak*,

- 21 -

216 F.3d at 308.  To establish a motive, a complaint must allege "that defendants benefitted in some concrete and personal way from the purported fraud."  *Id.* at 307-08.

A complaint adequately pleads scienter as to a corporation "by pleading facts sufficient to create a strong inference either (1) that someone whose intent could be imputed to the corporation acted with the requisite scienter or (2) that the statements would have been approved by corporate officials sufficiently knowledgeable about the company to know that those statements were misleading."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015).  Here, Plaintiffs have adequately alleged scienter under both a recklessness and motive and opportunity standard.

As discussed above, Microsoft publicly announced that the beta software was not ready to be relied upon as if it were a finished product.  ¶61.  Plaintiffs pled with particularity that Defendants were aware of its insufficiency, as: (i) Defendant Stefko and other Vince executives were intimately involved in the transition and participated in weekly meetings where discussions about the integration issues took place; (ii) the transition involved the most important aspects of Vince's business and operations; and (iii) Defendants had the motive and the opportunity to commit fraud.  ¶¶212-226.  Additionally, Company management learned of the data integration issues since they were discussed during weekly Company-wide teleconferences with managers from retail locations throughout the country.  ¶92.  During monthly, company-wide conference calls, Vince management would probe store managers and other participants about different issues with the ERP application.  *Id*.

Because Vince's entire direct-to-consumer segment depended on the performance of the ERP platform, the Individual Defendants were personally involved in the transition efforts, and were keenly aware of the problems, setbacks, and roadblocks related to these efforts in real time and as

- 22 -

they unfolded.  ¶215.  During a September 3, 2014 conference call, Defendant Klinger stated that inventory management, which relied on services provided under the Shared Services Agreement, was "***clearly a top priority*** for this management team.  ***It is monitored in detail on a very regular basis.***"  ¶220.  Similarly, in a March 19, 2015 conference call, Defendant Klinger stated that Vince's management was carrying out the migration efforts "***very thoughtfully and prudently***" to ensure a smooth transition.  *Id*.  Likewise, during a September 3, 2015 conference call, Defendant Brody stated that "***our top priority*** is to focus on improving our inventory management."  *Id*.  On September 8, 2016, Defendant Hoffman stated on another call with investors that Vince's "inventory management is really ***top of mind***."  *Id*.

Notably, although the R&R held that Plaintiffs failed to adequately allege a strong inference of scienter, the R&R failed to discuss any of Plaintiffs' allegations.  *See Tellabs*, 551 U.S. at 310 (noting that the court's job in the scienter analysis is "to assess all the allegations holistically.").  Therefore, the R&R's holding regarding scienter should be rejected by the Court.

### C.    Plaintiffs' §20(a) Claims Are Actionable Because Plaintiffs Have Stated a Primary Violation of the Securities Laws

The R&R recommends that Plaintiffs' Section 20(a) claims be dismissed on the grounds that Plaintiffs have not sufficiently alleged a primary violation of the securities laws.  As explained above, the Complaint sufficiently alleges a Section 10(b) violation, and it alleges that the Sun Capital Defendants controlled and exercised substantial influence over Vince before, during, and after the IPO.  ¶¶41-44.  Therefore, this Court should deny Defendants' motion to dismiss Plaintiffs' Section 20(a) claims.

### D.    Plaintiffs Should Be Afforded the Opportunity to Cure Any Pleading Deficiencies

The R&R recommends that the AC be dismissed without leave to re-plead.  If the Court dismisses all or part of the AC, Plaintiffs respectfully request that the Court decline to follow the

R&R's recommendation and grant Plaintiffs leave to amend, which should be freely given. *See* Fed.

R. Civ. P. 15(a)(2).  Here, Plaintiffs have only filed one amended complaint.  As the Second Circuit

has explained, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of

amendment or be in a position to weigh the practicality and possible means of curing specific

deficiencies." *Loreley*, 797 F.3d at 190.

## IV.    CONCLUSION

For the foregoing reasons and those detailed in Plaintiffs' oppositions to Defendants'

Motions to Dismiss, Plaintiffs respectfully request that the Court decline to adopt the Magistrate's

Report and Recommendation on Defendants' Motions to Dismiss.

DATED:  May 28, 2020                      Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          EVAN J. KAUFMAN


                                                */s/ Evan J. Kaufman*
                                          EVAN J. KAUFMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          ekaufman@rgrdlaw.com

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          BRIAN E. COCHRAN
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101-8498
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)
                                          bcochran@rgrdlaw.com

LEEDS BROWN LAW, P.C.
JEFFREY K. BROWN
One Old Country Road, Suite 347
Carle Place, NY  11514
Telephone:  516/873-9550
516/747-5024 (fax)
jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 28, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN

ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
ekaufman@rgrdlaw.com