UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD ZECHER, ROBERT YADEGAR, ZECH CAPITAL LLC, Y-GAR CAPITAL LLC, RICHARD N. ZECHER 2010 FAMILY TRUST, RICHARD N. ZECHER 2010 FAMILY TRUST FOR THE BENEFIT OF EVAN GREGORY ZECHER, and RICHARD N. ZECHER 2010 FAMILY TRUST FOR THE BENEFIT OF RACHEL JOY ZECHER, | 2:18-cv-05072 (SJF) (AYS) ORAL ARGUMENT REQUESTED |
| Plaintiffs, | |
| v. | |
| VINCE HOLDING CORP., JILL GRANOFF, LISA KLINGER, MARK BRODY, BRENDAN HOFFMAN, DAVID STEFKO, MARC J. LEDER, SUN CAPITAL PARTNERS, INC., SUN CARDINAL, LLC, SCSF CARDINAL, LLC, and SUN CAPITAL PARTNERS MANAGEMENT V, LLC, | |
| Defendants. | |
| ALFRED ZECHER, | 2:19-cv-05629 (SJF) (AYS) ORAL ARGUMENT REQUESTED |
| Plaintiff, | |
| v. | |
| VINCE HOLDING CORP., JILL GRANOFF, LISA KLINGER, MARK BRODY, BRENDAN HOFFMAN, DAVID STEFKO, MARC J. LEDER, SUN CAPITAL PARTNERS, INC., SUN CARDINAL, LLC, SCSF CARDINAL, LLC, and SUN CAPITAL PARTNERS MANAGEMENT V, LLC, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS
TO THE REPORT AND RECOMMENDATION OF THE HON. ANNE Y. SHIELDS**

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ......................................................................................................................... 7

I.      STANDARD OF REVIEW ....................................................................................... 7

II.     THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL
        OF PLAINTIFFS' SECTION 10(b) AND RULE 10b-5 CLAIMS ................................... 8

        A.      The Magistrate Judge Correctly Concluded That Plaintiffs Fail to Satisfy
                the Particularized Pleading Requirements of Rule 9(b) and the PSLRA ............... 8

        B.      The Magistrate Judge Correctly Concluded That Vince Was Not Required
                to Disclose Its Purported Use of a "Beta" Version of the Microsoft
                Software ............................................................................................................... 11

        C.      The Magistrate Judge Correctly Concluded That Vince's Comprehensive
                Risk Disclosures Were Adequate .......................................................................... 14

        D.      The Magistrate Judge Correctly Concluded That Plaintiffs' Claims Allege
                Corporate Mismanagement, Which Is Not Actionable Under the Federal
                Securities Laws .................................................................................................... 16

        E.      Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter ........ 19

III.    THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED THE
        DISMISSAL OF PLAINTIFFS' SECTION 20(a) CLAIMS ............................................ 22

IV.     THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DENYING
        PLAINTIFFS LEAVE TO RE-PLEAD .................................................................... 23

V.      PLAINTIFFS' CLAIMS FAIL FOR THE ADDITIONAL REASONS SET OUT
        IN DEFENDANTS' MOTIONS TO DISMISS ......................................................... 24

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*30 Clinton Place Owners Inc.* v. *City of New Rochelle*,
  2014 WL 890482 (S.D.N.Y. Feb. 27, 2014)........................................................10

*Abuhamdan* v. *Blyth, Inc.*,
  9 F. Supp. 3d 175 (D. Conn. 2014)......................................................................12

*Acito* v. *IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ...................................................................................17

*Allen* v. *Leonard*,
  2020 WL 2537280 (E.D.N.Y. May 19, 2020) ..................................................7, 22

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)..............................................................................19, 22

*BankUnited, N.A.* v. *Merritt Envt'l Consulting Corp.*,
  360 F. Supp. 3d 172 (S.D.N.Y. 2018)..................................................................23

*Barr* v. *McGraw-Hill, Inc.*,
  710 F. Supp. 95 (S.D.N.Y. 1989).........................................................................24

*In re Barrick Gold Corp. Secs. Litig.*,
  341 F. Supp. 3d 358 (S.D.N.Y. 2018)..................................................................22

*Basic Inc.* v. *Levinson*,
  485 U.S. 224 (1988)..............................................................................................12

*Blue Chip Stamps* v. *Manon Drug Stores*,
  421 U.S. 723 (1975)..............................................................................................25

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ...........................................................................16

*Boguslavsky* v. *Kaplan*,
  159 F.3d 715 (2d Cir. 1998).................................................................................23

*C.D.T.S.* v. *UBS AG*,
  2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) .................................................17, 18

*Cephas* v. *Nash*,
  328 F.3d 98 (2d Cir. 2003)..............................................................................10, 22

*City of Pontiac Gen. Emps. Ret. Sys.* v. *MBIA, Inc.*,
    637 F.3d 169 (2d Cir. 2011)..............................................................................25

*In re Crocs, Inc. Sec. Litig.*,
    774 F. Supp. 2d 1122 (D. Colo. 2011) ......................................................16, 17

*Defer LP* v. *Raymond James Fin.*, *Inc.*,
    654 F. Supp. 2d 204 (S.D.N.Y. 2009)........................................................10, 19

*Dexia SA/NV* v. *Deutsche Bank AG*,
    2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) ...........................................................24

*DiPilato* v. *7-Eleven, Inc.*,
    662 F. Supp. 2d 333 (S.D.N.Y. 2009)...................................................................7

*In re Duane Reade Inc. Sec. Litig.*,
    2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003).................................................10

*In re Eros Int'l Sec. Litig.*,
    2017 WL 6405846 (S.D.N.Y. Sept. 22, 2017)...................................................13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................16

*Field* v. *Trump*,
    850 F.2d 938 (2d Cir. 1998)...............................................................................17

*United States* v. *Fischer*,
    993 F. Supp. 2d 238 (E.D.N.Y. 2013) ................................................................10

*Flag Telecom Holdings, Ltd. Sec. Litig.*,
    618 F. Supp. 2d 311 (S.D.N.Y. 2009)...........................................................15, 16

*Ford* v. *Voxx Int'l Corp.*,
    2016 WL 3982466 (E.D.N.Y. July 22, 2016).....................................................11

*Friedman* v. *JP Morgan Chase & Co.*,
    2016 WL 2903273 (S.D.N.Y. May 18, 2016) .....................................................25

*Goldfinger* v. *Journal Commc'ns, Inc.*,
    2015 WL 2189752 (E.D. Wisc. May 8, 2015).....................................................12

*Gutman* v. *Klein*,
    2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008) ........................................................7

*Hayden* v. *County of Nassau*,
    180 F.3d 42 (2d Cir. 1999)..................................................................................24

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
   1998 WL 283286 (S.D.N.Y. June 1, 1998) ...........................................20

*Heckmann* v. *Town of Hempstead*,
   2013 WL 1345250 (E.D.N.Y. Mar. 27, 2013) ........................................7

*Jackson* v. *Abernathy*,
   2020 WL 2755690 (2d Cir. May 27, 2020) ........................................3, 21

*Kleinman* v. *Elan Corp., plc*,
   706 F.3d 145 (2d Cir. 2013).....................................................13

*Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)......................................................24

*Luo* v. *Sogo, Inc.*,
   2020 WL 3051019 (S.D.N.Y. June 8, 2020) .........................................13

*Matrixx Initiatives, Inc.* v. *Siracusano*,
   563 U.S. 27 (2011).................................................................8

*Melcher* v. *Fried*,
   2018 WL 2411747 (S.D. Cal. May 29, 2018)........................................25

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   2011 WL 1330847 (S.D.N.Y. Mar. 30, 2011) ..................................15, 16

*Morgan Art Found. Ltd.* v. *McKenzie*,
   2019 WL 2725625 (S.D.N.Y. July 1, 2019) .........................................23

*Olkey* v. *Hyperion 1999 Term Tr., Inc.*
   98 F.3d 2 (2d Cir. 1996)......................................................14, 15

*In re Omega Healthcare Inv'rs, Inc. Sec. Litig.*,
   375 F. Supp. 3d 496 (S.D.N.Y. 2019)..............................................14

*Owusu* v. *N.Y. State Ins.*,
   655 F. Supp. 2d 308 (S.D.N.Y. 2009)..............................................7

*In re Rockwell Med., Inc. Sec. Litig.*,
   2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...............................13, 14, 21

*Salinger* v. *Projectavision, Inc.*,
   972 F. Supp. 222 (S.D.N.Y. 1997)................................................24

*Santa Fe Indus., Inc.* v. *Green*,
   430 U.S. 462 (1977)............................................................16, 17

*Singh* v. *Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019)..............................................................................15, 16

*Slayton* v. *Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010).....................................................................................19

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008).....................................................................................20

*Tellabs, Inc.* v. *Makor Issues & Rights Ltd.*,
   551 U.S. 308 (2007)...................................................................................................19

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
   2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019) ........................................................13

*In re Time Warner Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) .........................................................................................12

*Unique Photo Inc.* v. *Vormittag Assocs., Inc.*,
   2010 WL 3909324 (E.D.N.Y. Sept. 29, 2010) .......................................................7, 8

*In re Veon Ltd. Sec. Litig.*,
   2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)..........................................................23

*Williams* v. *Citibank, N.A.*,
   565 F. Supp. 2d 523 (S.D.N.Y. 2008).......................................................................22

## STATUTES

28 U.S.C. § 636(b)(1)(A)..................................................................................................7

28 U.S.C. § 1658.............................................................................................................25

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(1) .................6, 8, 22, 24

Securities Exchange Act of 1934, section 10(b), 15 U.S.C. § 78j(b) ...................5, 8, 16

Securities Exchange Act of 1934, section 20(a), 15 U.S.C. § 78t(a)..................5, 22, 25

## OTHER AUTHORITIES

Fed. R. Civ. P. 8..............................................................................................................24

Fed. R. Civ. P. 9(b) ...............................................................................................6, 8, 24

Fed. R. Civ P. 12(b)(6)......................................................................................................5

Fed. R. Civ. P. 72(b)(3) .................................................................................................................7

Rule 10b-5, 17 C.F.R. § 240.10b-5 ............................................................................5, 8, 13, 16

Defendants respectfully submit this response to Plaintiffs' objections (the "Objections") to Magistrate Judge Anne Y. Shields's April 14, 2020 Report and Recommendation (the "R&R"), which recommends that the Court grant Defendants' motions to dismiss the nearly identical operative complaints (together, the "Complaints") in these cases—*Zecher I* and *Zecher II*[1]—in their entirety, without leave to re-plead.

## PRELIMINARY STATEMENT[2]

In a well-reasoned, 21-page R&R fully supported by applicable case law, Magistrate Judge Shields concluded that the Complaints fail to state a claim for relief and should be dismissed with prejudice.  Plaintiffs' Objections do not show that the Magistrate Judge erred in any way.  Instead, they improperly rehash certain arguments that Plaintiffs made in opposition to Defendants' motions to dismiss and are, in any event, meritless.

The Complaints allege that Vince, a luxury fashion retailer, violated federal securities laws in connection with statements it made, or allegedly omitted regarding the migration of its distribution and information technology ("IT") systems from a shared system to a new, cloud-based system that ultimately did not work as planned.  The Magistrate Judge concluded that Plaintiffs' claims should be dismissed for several reasons:

*First*, the Magistrate Judge found that the Complaints do not plead particularized facts showing that any of Vince's disclosures were false when made.

---

[1]  We refer to *Richard Zecher* v. *Vince Holding Corp.*, No. 2:18-cv-05072-SJF-AYS, as *Zecher I* and *Alfred Zecher* v. *Vince Holding Corp.*, No. 2:19-cv-05629-SJF-AYS, as *Zecher II*.

[2]  "Vince" or the "Company" refers to Vince Holding Corp.; "Plaintiffs" refers to the plaintiffs in *Zecher I* and *Zecher II*, collectively; "*Zecher I* Br." refers to the moving brief in *Zecher I* (Dkt. 25); "*Zecher I* Opp'n" refers to the opposition brief in *Zecher I* (Dkt. 27); "*Zecher I* Reply" refers to the reply brief in *Zecher I* (Dkt. 29); "Ex." refers to an exhibit to the Declaration of Robert N. Kravitz in *Zecher I* (Dkt. 26), except where otherwise noted herein; "*Zecher II* Br." refers to the moving brief in *Zecher II* (Dkt. 25-1); and "*Zecher II* Reply" refers to the reply brief in *Zecher II* (Dkt. 25-8).

*Second*, the Magistrate Judge found that, even if true, Plaintiffs' unsupported allegation that Vince was using a so-called "beta" version of software was not a fact that Vince needed to disclose.

*Third*, the Magistrate Judge concluded that Vince's repeated warnings that problems with its systems migration could arise and affect its operations and financial results precluded Plaintiffs from claiming that Defendants misled investors by failing to disclose those risks.

*Fourth*, the Magistrate Judge found that Plaintiffs' claims, in essence, allege corporate mismanagement, which is not an actionable claim under the federal securities laws.

Plaintiffs' Objections identify no flaw in the Magistrate Judge's conclusions. Nor could they. Vince's repeated disclosures of the potential risks associated with its systems migration fully support the Magistrate Judge's conclusion that the Company did not withhold any material information, and that none of those disclosures was false or misleading. In addition, case law fully supports the Magistrate Judge's conclusion that, having adequately disclosed those risks, Vince was not required to go further "into the weeds" about the systems migration by disclosing that it was purportedly using a "beta" version of its new platform. And the Supreme Court established more than forty years ago that claims of corporate mismanagement are not actionable under the federal securities laws where, as here, a plaintiff identifies no fraudulent misrepresentations or omissions.

Furthermore, to the extent that the Magistrate Judge addressed scienter, the Objections likewise identify no error. Plaintiffs fail to show that any Individual Defendant had any motive to commit fraud. Nor do they adequately allege that any Individual Defendant had actual or constructive knowledge that the Company's disclosures were false (which they were not). And, absent any viable scienter allegations against any Individual Defendant, Plaintiffs' claim of

2

"corporate" scienter on the part of Vince also fails, as the Second Circuit's recent opinion in *Jackson* v. *Abernathy*, 2020 WL 2755690 (2d Cir. May 27, 2020), confirms.

In sum, the Magistrate Judge's R&R is correct in all respects and should be adopted in its entirety. Moreover, Defendants' motions to dismiss presented additional grounds for dismissal that the Magistrate Judge did not address, including the fact that the complaint in *Zecher II* is time-barred. Dismissal is warranted on those additional grounds as well.

## BACKGROUND[3]

### *Vince's Systems Migration*

Vince is a luxury apparel brand that began as a business unit of Kellwood Company ("Kellwood") and went public as a separate company in an initial public offering (the "IPO") in 2013. (AC ¶¶ 2–3.) Before and after the IPO, Vince used Kellwood's enterprise resource planning ("ERP") system (essentially, software that enables the use of integrated computer applications across an organization) for various functions. (*Id.* ¶ 70.) As Vince disclosed in its public filings, Vince began the process of implementing its own new ERP system in early 2015 and expected to complete it by the end of that year. (*Id.* ¶ 74.) Vince also disclosed that its new ERP system would be "'based on a system from Microsoft Dynamics AX and is cloud-based.'" (*Id.* ¶ 75 (quoting 2014 10-K at 8).)

Vince's public filings thereafter consistently disclosed that the Company could run into problems in migrating its IT and distribution systems and that these problems could materially harm the business. To give just a few examples, Vince disclosed:

- "Problems with our distribution system, including any disruption caused by the migration, could materially harm our ability to meet customer expectations, manage

---

[3] A fuller recitation of the relevant facts is set forth in Defendants' motions to dismiss. (*Zecher I* Br. 3–8; *Zecher II* Br. 3–6.) Because the Complaint in *Zecher II* is nearly identical to the Amended Complaint in *Zecher I*, Defendants cite only to the Amended Complaint in *Zecher I* (the "Amended Complaint" or the "AC").

inventory, complete sale transactions and achieve targeted operating efficiencies."
(*Id.* ¶ 137 (quoting 3Q15 10-Q at 33).)

- "[I]f we cannot successfully transition these services to our own systems, our business, financial condition, results of operations and cash flows could be materially harmed . . . .  The new systems we implement may not operate as successfully as the systems we historically used . . . .  If we fail to successfully transition the systems, our business and results of operations may be materially and adversely affected."  (*Id.* ¶ 117 (quoting 2014 10-K at 14).)

- "[T]here can be no assurance that the transition . . . , including the completion of such transition within our expected timeline, will be successful, and problems encountered in such transition could have a material adverse effect on our business, financial condition, liquidity and results of operations."  (*Id.* ¶ 137 (quoting 3Q15 10-Q at 33).)

- "Any failure or significant downtime in our own financial or administrative systems . . . during the transitional period . . . could result in unexpected costs, impact our results or prevent us from paying our suppliers and employees and performing other administrative services on a timely basis and materially harm our business, financial condition, results of operations and cash flows."  (*Id.* ¶ 119 (quoting 2014 10-K at 14).)

- "[A]ny difficulty in . . . integrating newly acquired assets into our business could result in unexpected costs, impact our results or prevent us from paying our suppliers and employees and performing other administrative services on a timely basis and materially harm our business, financial condition, results of operations and cash flows."  (¶ 149 (quoting 2015 10-K at 11).)

- "Our ability to meet the needs of our wholesale partners and our own direct-to-consumer business depends on the proper operation of this distribution facility."  (*Id.* ¶ 151 (quoting 2015 10-K at 12).)

- "There can be no assurance that we will not encounter problems as a result of such transition, including significant chargebacks from our wholesale partners and delays in shipments of merchandise to our customers, which could have a material adverse effect on our business, financial condition, liquidity and results of operations."  (*Id.* ¶ 161 (quoting 1Q16 10-Q at 28).)

- "[T]he processes and functions that were transitioned to our internal capabilities may not achieve the appropriate levels of operational efficiency in a timely manner, or at all."  (*Id.* ¶ 187 (quoting 3Q16 10-Q at 30).)

On April 14, 2017, Vince disclosed that it was in fact having difficulties with its new

systems, which would delay the release of its year-end financial results.  (*See id.* ¶¶ 191–92.)

Two weeks later, the Company reported its delayed results (*id.* ¶ 194), which showed a drop in sales due to "challenges related to our systems conversion, which led to delayed shipments . . . and off-price shipments." (Ex. 5.)

***Plaintiffs' Complaints and Defendants' Motions to Dismiss***

Plaintiff Richard Zecher and affiliated companies and family trusts filed the initial complaint in *Zecher I* nearly a year and a half later, in September 2018, alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5. After Defendants moved to dismiss that complaint in December 2018 for failure to state a claim under Rule 12(b)(6), Plaintiffs withdrew the complaint, tacitly acknowledging its deficiencies. Plaintiff then filed the Amended Complaint in January 2019, which Defendants again moved to dismiss on substantially the same grounds.

In October 2019, nearly three months after briefing on Defendants' motion to dismiss the Amended Complaint was completed, an individual named Alfred Zecher—Richard Zecher's father—filed, as the lone plaintiff in *Zecher II*, the Complaint, which was essentially a carbon copy of the Amended Complaint in *Zecher I.* In November 2019, Plaintiffs moved to consolidate *Zecher I* and *Zecher II*, and, in February 2020, Defendants filed their fully briefed motion to dismiss the Complaint in *Zecher II* on the grounds that it is time-barred, fails to satisfy pleading requirements regarding identifying stock purchases, and fails to demonstrate Alfred Zecher's standing to sue on behalf of accounts and entities he purports to control—in addition to the other grounds set forth in the motion to dismiss *Zecher I.*

***The Magistrate Judge's R&R***

The Court referred Plaintiffs' motion to consolidate and Defendants' motions to dismiss the Complaints in *Zecher I* and *Zecher II* to Magistrate Judge Shields on February 7, 2020. The

Magistrate Judge issued her R&R on April 14, 2020.  As the Magistrate Judge found, both

Complaints primarily rested on the allegation that Defendants' public statements violated the

Exchange Act by purportedly failing to disclose:

- that the Company was developing an ERP system around a new technology that had not been proven;

- that the Company was developing its ERP platform using an unfinished "beta" version of Microsoft AX-7 that had been released for testing and development purposes only;

- that the Company was not developing middleware to perform the necessary data integration processes; and

- that the foregoing conduct substantially increased the risk of severe complications during the transition, and the likelihood that Vince's business and results of operations would be adversely affected.

(R&R 11 (citing AC ¶ 112).)

The Magistrate Judge concluded that Plaintiffs' claims fail to state a claim for relief, for

several reasons:

(1) Plaintiffs fail to plead with particularity that any of Vince's disclosures were false, much less fraudulent, when made, as required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA") (*id.* at 19);

(2) the particular type of software that Vince used, even if it was a "beta" version, was not material information that the Company was required to disclose (*id.* at 18–19);

(3) Vince's clear disclosures of the possible negative effects of its system migration preclude Plaintiffs' claims that Defendants failed to disclose those risks (*id.* at 16–17); and

(4) at their core, the Complaints allege corporate mismanagement, which is not actionable under the federal securities laws (*id.* at 17–18).

Accordingly, the Magistrate Judge recommended that Defendants' motions to

dismiss be granted in their entirety, without leave to re-plead.  In view of that recommendation,

the Magistrate Judge also recommended that Plaintiffs' motion to consolidate be denied as moot.

(*Id.* at 20.)  Plaintiffs' Objections challenge each of the Magistrate Judge's rulings concerning the deficiencies of their Complaints, in addition to rehashing their arguments regarding scienter.

## ARGUMENT

### I.     STANDARD OF REVIEW

This Court reviews *de novo* "any part of the magistrate judge's disposition that has been *properly* objected to." Fed. R. Civ. P. 72(b)(3) (emphasis added); 28 U.S.C. § 636(b)(1)(A). Objections, however, "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Allen* v. *Leonard*, 2020 WL 2537280, at *1 (E.D.N.Y. May 19, 2020) (citation omitted); *accord Gutman* v. *Klein*, 2008 WL 5084182, at *1 (E.D.N.Y. Dec. 2, 2008). "[G]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *Unique Photo Inc.* v. *Vormittag Assocs., Inc.*, 2010 WL 3909324, at *1 (E.D.N.Y. Sept. 29, 2010) (citation omitted); *see also Allen*, 2020 WL 2537280, at *1 (noting such objections are reviewed "strictly for clear error" (citation omitted)).[4]  As this Court has explained, the "clear error" standard of review is appropriate because, otherwise, such objections would improperly relegate "the magistrate[] [judge's] work to something akin to a meaningless dress rehearsal." *Heckmann* v. *Town of Hempstead*, 2013 WL 1345250, at *1 (E.D.N.Y. Mar. 27, 2013); *accord Owusu* v. *N.Y. State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009).

Here, Plaintiffs' Objections do no more than rehash arguments Plaintiffs advanced below—for example, that they purportedly allege more than mere mismanagement (*compare* Objs. 14–15, *with Zecher I* Opp'n 11–12), and allege fraud and scienter with sufficient

---

[4]  *See also DiPilato* v. *7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (stating that objections "must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument").

particularity (*compare* Objs. 9–10, *with Zecher I* Opp'n 12; Objs. 21–23, *with Zecher I* Opp'n 26–28). Therefore, the clear error standard is warranted. *E.g.*, *Unique Photo*, 2010 WL 3909324, at *2 (rejecting arguments "made and fully briefed before" under clear error standard). The Objections, however, fail under any conceivably applicable standard.

## II. THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS' SECTION 10(b) AND RULE 10b-5 CLAIMS

To state a claim for a violation of section 10(b) and Rule 10b-5, Plaintiffs must allege plausible facts showing, among other things, (1) a material misrepresentation or omission by the defendants; (2) scienter; and (3) "a connection between the misrepresentation or omission and the purchase or sale of a security." *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 37–38 (2011). As to each element, Plaintiffs must also meet the heightened pleading standards of Rule 9(b) and the PSLRA by: (1) "specify[ing] each statement alleged to have been misleading"; (2) identifying "the reason or reasons why the statement is misleading"; and (3) "stat[ing] with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Failure to meet any of these requirements mandates dismissal. *Id.* § 78u–4(b)(3)(a).

The Magistrate Judge correctly concluded that Plaintiffs fail to meet these standards.

### A. The Magistrate Judge Correctly Concluded That Plaintiffs Fail to Satisfy the Particularized Pleading Requirements of Rule 9(b) and the PSLRA

#### 1. *Plaintiffs Fail to Plead Falsity with Particularity*

As the Magistrate Judge rightly concluded, the Complaints fail to allege particularized facts showing any misstatements. (R&R 19.) Instead, the Complaints acknowledge the Company's consistent, detailed disclosures concerning the problems that emerged, without showing that any of those disclosures were false when made or that there was any cover-up of the problems after they ultimately arose. (*Zecher I* Br. 10–13, 21–26, 28–34; *Zecher I* Reply Br. 4–7, 9–10, 13–16, 20–24.) In fact, in their briefing on Defendants' motion, Plaintiffs conceded

8

that the problems with the migration did not even materialize until the second quarter of 2016. (*Zecher I* Opp'n 19.)  That concession is fatal:  none of Vince's disclosures prior the third quarter of 2016 could have been false or misleading, at the time they were made, if the problems that Plaintiffs allege should have been disclosed earlier had not yet occurred.  In their Objections, Plaintiffs do not meaningfully respond to any of this.  Instead, they merely list, in summary fashion, the paragraphs in which they purport to have alleged such facts (Objs. 9–10), without in any way rebutting the Magistrate Judge's conclusion that these allegations are inadequate.

Plaintiffs also argue that certain magazine articles about Microsoft's AX-7 ERP software referenced in their Complaints somehow rebut the Magistrate Judge's conclusion that Plaintiffs fail to plead falsity with particularity, including by not adequately alleging "the insufficiency of the Microsoft product used." (*Id.* at 10 (quoting R&R 19).)  That argument fails, too.  Vince's only disclosures about the Microsoft product were in its 2014 Form 10-K, where the Company simply stated that its "new ERP system is based on a system from Microsoft Dynamics AX and is cloud-based" (AC ¶ 75), and in its 2015 Form 10-K, where the Company stated that "the new ERP system is operated on a system from Microsoft Dynamics AX" (*id.* ¶ 80).  Nothing in the articles shows that either of those statements is either false or misleading.  None of the articles mentions Vince, let alone suggests that Vince used the alleged "beta" software.  (*See* Exs. 6, 7; Decl. of Robert Kravitz, dated July 2, 2020 ("Kravitz Decl."), Ex. 1.)

Nor do the articles suggest that if Vince *had* used a "beta" software version, then that version would have been responsible for the systems transition problems that occurred.  (*See id.*)  For instance, the November 29, 2015 *MSDynamicsWorld.com* article that Plaintiffs cite does not state that the AX software "was still under development" at the time of the article.  (Objs. 10.)  Rather, the referenced statement—that there remained "a significant amount of work . . . to shore

9

up the new AX for real consumers"—was made with respect to work remaining as of *November 2014* (Ex. 6), a year before Plaintiffs allege that Vince began its transition.

2. ***Plaintiffs Fail to Plead Fraud with Particularity as to Each Defendant***

The Magistrate Judge also correctly found that Plaintiffs fail to plead fraud with sufficient particularity for each named Defendant, reasoning that "Plaintiffs fail to elaborate on their claims as to . . . any of the Defendants' knowledge" with regard to the "beta" software's purported insufficiency.  (R&R 19); *Defer LP* v. *Raymond James Fin.*, *Inc.*, 654 F. Supp. 2d 204, 216–17 (S.D.N.Y. 2009) (stating the particularized pleading requirement as to each defendant).

In their Objections, Plaintiffs do not challenge this aspect of the R&R's ruling with respect to Marc Leder or the Sun Capital Defendants, and therefore have waived any objections as to them.[5]  *See, e.g.*, *Cephas* v. *Nash*, 328 F.3d 98, 107 (2d Cir. 2003).  And, for the few Individual Defendants Plaintiffs *do* mention, Plaintiffs raise no viable objections, and instead merely cite a litany of paragraphs in the Complaints that do not show which of, or when, or how those Defendants came to know that Vince was purportedly using a "beta" software, that this use was at all problematic, or that any statement was false when made.  (Objs. 9–10.)

For example, the alleged misstatements attributed to Jill Granoff, Brendan Hoffman, and David Stefko are classic examples of inactionable puffery, statements of expectation, and corporate optimism.  (AC ¶¶ 121, 157, 167); *see In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *4 (S.D.N.Y. Nov. 25, 2003).  And, as to the one statement Plaintiffs identify with respect to Ms. Granoff in particular—*i.e.*, a June 4, 2015 statement that Vince "remain[s] on

---

[5] In *Zecher I*, Plaintiffs failed to respond to Defendants' particularized pleading arguments with respect to all Individual Defendants except David Stefko.  Therefore, as to each of those Defendants, Plaintiffs abandoned their arguments and cannot now raise them in objection to the R&R.  *United States* v. *Fischer*, 993 F. Supp. 2d 238, 244 (E.D.N.Y. 2013); *see also 30 Clinton Place Owners Inc.* v. *City of New Rochelle*, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014) (deeming claims abandoned where opposition brief failed to respond to arguments for dismissal).

10

track to fully migrate our IT systems, processes, and support structure during the back half of the year" (AC ¶ 121; Objs. 9)—there are no allegations explaining how it was untrue when made. Nor could there be given Plaintiffs' concession that problems did not materialize until the second quarter of 2016 (*Zecher I* Opp'n 19), well after Ms. Granoff's departure from Vince (AC ¶ 33).

**B.     The Magistrate Judge Correctly Concluded That Vince Was Not Required to Disclose Its Purported Use of a "Beta" Version of the Microsoft Software**

The Magistrate Judge also correctly concluded that Defendants were not required to disclose that Vince was purportedly using a "beta" version of Microsoft's ERP product—an allegation for which Plaintiffs provide no support.  As the Magistrate Judge correctly concluded:

> Vince disclosed its need to transition from Kellwood's ERP systems.  It also disclosed that the Kellwood systems would be difficult to replace, and that transition might result in negative financial consequences . . . .  [G]oing into the weeds of particular software decisions, would not, from the point of view of a reasonable investor, have "significantly altered the 'total mix' of information available."

(R&R 18 (quoting *Singh* v. *Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019)).)  This is correct for at least three reasons.

*First*, Plaintiffs fail to allege particularized facts showing that Vince actually used a "beta" version of the Microsoft product.  As discussed above, Plaintiffs refer to various magazine articles about Microsoft's product, but none of them mentions Vince, let alone suggests that Vince used a "beta" version of the software.  (*See* Exs. 6, 7; Kravitz Decl., Ex. 1.)  And, despite Plaintiffs' claim that their counsel's investigation included interviews of former Vince employees (Objs. 11), the Complaints neither identify any such employees, even on a confidential basis, nor allege that a single employee or anyone else said anything about Vince's ERP system using a "beta" version of the Microsoft product.  This is fatal to their claim.  *See, e.g., Ford* v. *Voxx Int'l Corp.*, 2016 WL 3982466, at *5 (E.D.N.Y. July 22, 2016).

11

*Second*, the Magistrate Judge was correct in concluding that the particular type of software used by a company is not material information.  (R&R 18–19.)  The Supreme Court has consistently been "careful not to set too low a standard of materiality" out of concern that "a minimal standard might . . . lead management simply to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking."  *Basic Inc.* v. *Levinson*, 485 U.S. 224, 231 (1988) (citation omitted).  "[T]ell me more" pleadings like Plaintiffs' do not state a claim, because they would lead to precisely such "an avalanche of trivial information."  *See Goldfinger* v. *Journal Commc'ns, Inc.*, 2015 WL 2189752, at *5 (E.D. Wisc. May 8, 2015) (quoting *TSC Indus., Inc.* v. *Northway, Inc*., 426 U.S. 438, 448–49 (1976)); *Abuhamdan* v. *Blyth, Inc.*, 9 F. Supp. 3d 175, 189 (D. Conn. 2014).

There is, of course, always more that a company *can* disclose about its technology:  who manufactured it; what release of the product it is; how long it has been in use; whether other companies have used it successfully; and on and on.  But, as the Supreme Court has warned, drowning investors in such encyclopedic information would hinder, not help, informed decisionmaking.  Here, Vince repeatedly warned that it was transitioning to a new software system, and that problems with this system could materially impact its operations and financial results.  It even disclosed the manufacturer (Microsoft), the specific product (Dynamics AX), and that it was "cloud-based."  The Magistrate Judge correctly concluded that going even further "into the weeds" of Vince's technology choice was not material information.  (R&R 18–19.)

*Third*, even material information need not be disclosed if there is no duty to disclose it.  "[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."  *In re Time Warner Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  "[A]n omission is actionable under the securities laws only when the corporation is subject to a

duty to disclose the omitted facts." *Id.*; *see also Luo* v. *Sogo, Inc.*, 2020 WL 3051019, at *8 (S.D.N.Y. June 8, 2020) ("Just as the 'duty to disclose' does not 'encompass non-material information,' '[m]ateriality alone does not demand disclosure.'" (quoting *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013))).

Plaintiffs identify no obligation on Vince to disclose that it was purportedly using a "beta" version of the Microsoft product.  They do not allege, for instance, that Vince made any affirmative representation concerning the degree to which its software product was developed. Thus, any failure to disclose that Vince was purportedly a "beta" version did not render any of its statements misleading, and the Company therefore had no duty to disclose it.  *See Kleinman* v. *Elan Corp., plc*, 706 F.3d 145, 152–53 (2d Cir. 2013) ("Disclosure is required . . . only when necessary to make statements made, in light of the circumstances in which they were made, not misleading." (citation omitted)); *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, 2019 WL 1368787, at *11–12 (S.D.N.Y. Mar. 26, 2019) ("[S]ilence alone 'is not misleading under Rule 10b-5.' Disclosure is required only when necessary to make statements contemporaneously or previously made not misleading." (footnote omitted)); *In re Eros Int'l Sec. Litig.*, 2017 WL 6405846, at *5 (S.D.N.Y. Sept. 22, 2017) (rejecting claim that company was required to disclose that its registered users did not make "meaningful" use of the company's platform  where the complaint did not allege that the defendants made any affirmative misrepresentations on that issue), *aff'd sub nom. Eisner* v. *Eros Int'l PLC*, 735 F. App'x 15 (2d Cir. 2018).

Plaintiffs nonetheless assert that "once Vince chose to disclose facts concerning the IT transition, it was under a duty to disclose full and complete information about the transition" (Objs. 16), but that misstates the law.  "[I]t is well settled that a corporation is not required to reveal all facts on a subject just because it reveals a single fact."  *In re Rockwell Med., Inc. Sec.*

*Litig.*,  2018 WL 1725553, at *10 (S.D.N.Y. Mar. 30, 2018) (citation omitted); *see also In re Omega Healthcare Inv'rs, Inc. Sec. Litig.*, 375 F. Supp. 3d 496, 511–12 (S.D.N.Y. 2019) ("[T]he requirement to be complete and accurate . . . does not mean that by revealing one fact . . . one must reveal all others that, too, would be interesting." (citation omitted)).  "Such a broad theory of omissions liability would paralyze corporate spokespersons and likely yield less, rather than more, information for investors."  *Rockwell Med.*, 2018 WL 1725553, at *11.

C.   **The Magistrate Judge Correctly Concluded That Vince's Comprehensive Risk Disclosures Were Adequate**

As the Magistrate Judge correctly determined, Vince's repeated warnings about the risks its systems migration posed—warnings that the Complaints themselves repeatedly acknowledge and reproduce—foreclose any claim that Defendants failed to disclose those risks.  (R&R 16–17.)  Indeed, "[w]ithout repeating the verbatim text" of those disclosures (*id.* at 5), the Magistrate Judge rightly noted that "Vince warned investors, in each and every SEC public filing and press release, that this transition of critical support services might not be smooth" and that the implementation and migration "might materially harm Vince's business, financial condition, results of operation, and cash flow" (*id.* at 16)—a conclusion Plaintiffs "do not dispute." (Objs. 17.)  The Magistrate Judge also correctly concluded that the fact that those risks actually materialized does not show fraud.  (R&R 17); *Olkey* v. *Hyperion 1999 Term Tr., Inc.* 98 F.3d 2, 5 (2d Cir. 1996) (affirming dismissal where "[t]he prospectuses warn[ed] investors of exactly the risk th[at] plaintiffs claim was not disclosed").

Nonetheless, doubling down on their unsupported "beta" version allegations, Plaintiffs argue that the Magistrate Judge improperly found that Defendants had adequately disclosed the risks associated with the use of the "beta" software.  (Objs. 17–19.)  That argument fails, too.  As shown above, Vince comprehensively disclosed that its new ERP system might not work and the

14

full panoply of problems that this might cause—including the very problems that actually arose. Plaintiffs do not cite a single additional risk that a "beta" version could cause that was not fully encompassed in those disclosures.

Plaintiffs also argue that the "R&R conflates the disclosure of potential consequences of a troubled ERP transition with the disclosure of facts that would enable investors to evaluate the probability that the consequences would occur" and that the software was "expected . . . to have problems." (Objs. 19.)  But this does not work either because the Complaints do *not* adequately plead that problems were expected to occur (*see* R&R 19), and Plaintiffs concede that problems did not even *begin* to materialize until the second quarter 2016, well after most of the challenged statements (*Zecher I* Opp'n 19).  Plaintiffs thus attempt to plead impermissible "fraud by hindsight." (R&R 15, 17); *see also Singh*, 918 F.3d at 59–60; *Olkey*, 98 F.3d at 5.[6]

The cases that Plaintiffs rely on are inapposite. (Objs. 18–19.)  They involve situations in which companies made generic risk disclosures that did not identify the specific risks that the plaintiffs alleged.  For example, in *Flag Telecom Holdings, Ltd. Securities Litigation.*, 618 F. Supp. 2d 311 (S.D.N.Y. 2009), the company's risk factors disclosed that the company faced competition but not that pre-sales figures the company disclosed were not a reliable measure of demand for the company's products.  *Id.* at 322.  In *In re Merrill Lynch Auction Rate Securities Litigation*, 2011 WL 1330847 (S.D.N.Y. Mar. 30, 2011), the defendants made generic disclosures about the risks of auction rate securities, but failed to disclose their alleged knowledge that the market for the securities was teetering on the edge of collapse.  *Id.* at *2, *5.

---

[6] Contrary to Plaintiffs' assertion that the Magistrate Judge "inappropriately pointed to statements made during April 2017 *in support of [her] reasoning that Vince disclosed all necessary facts*" (Objs. 19 (emphasis added)), the Magistrate Judge did not, in fact, even mention the April 2017 disclosures when discussing the adequacy of Vince's disclosures. (R&R 16–17.)  The R&R's only reference to those disclosures is in its "FACTUAL BACKGROUND" section, where it accurately characterizes Vince's disclosures as "not always positive." (*Id.* at 6–7.)

In *In re Facebook, Inc. IPO Securities & Derivative Litigation*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013), the company issued a registration statement for an initial public offering that did not disclose a recent drop in sales due to increased mobile phone usage that was so severe that the company had already disclosed it to a select group of investors. *Id.* at 516.

Here, in contrast, Vince *did* disclose the specific risk at issue—that is, that its ERP system would not work properly—and there are no particularized allegations, unlike in *Flag Telecom*, *Merrill Lynch*, and *Facebook*, that the new software was already failing and disrupting the Company's operations prior to the Company's disclosures of those problems.

### D.     The Magistrate Judge Correctly Concluded That Plaintiffs' Claims Allege Corporate Mismanagement, Which Is Not Actionable Under the Federal Securities Laws

It has been bedrock law for more than 40 years that allegations of corporate mismanagement are not actionable under section 10(b) and Rule 10b-5. *Santa Fe Indus., Inc.* v. *Green*, 430 U.S. 462, 478–79 (1977). "[C]reative attempt[s] to recast corporate mismanagement as securities fraud" also fail. *See Singh*, 918 F.3d at 59–60; *see also Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012) ("Section 10(b) . . . does not reach mere instances of corporate mismanagement." (citation omitted)); *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1146 (D. Colo. 2011) (holding that allegations regarding company's "inability to fill customer orders because of its systems breakdowns" and "use of primitive software rather than modern systems to track inventory" "reveal mismanagement by [the company], not fraud").  Given these authorities, the Magistrate Judge correctly ruled that, absent any viable disclosure allegations, Plaintiffs could only be alleging that Vince had *mismanaged* its technology transition, which is not a viable basis for a securities claim under the *Santa Fe Industries* rule.  (R&R 17–18.)

16

Plaintiffs do not dispute the rule that these authorities stand for.  And their attempts to impugn the Magistrate Judge's conclusion based on that rule are misguided:

*First*, Plaintiffs attempt to limit the Magistrate Judge's cited authorities to their facts.  For example, they argue that the conduct in *Santa Fe* and *Field* v. *Trump*, 850 F.2d 938 (2d Cir. 1998), amounted to a breach of fiduciary duty.  (Objs. 12–13.)  But that does not in any way mean that, outside of that context, allegations of corporate mismanagement are sufficient to plead securities fraud.  They are not.  In fact, courts routinely dismiss securities actions on this basis where the alleged mismanagement had nothing to do with fiduciary duty.  *See, e.g.*, *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (allegations involved purported undisclosed deficiencies at manufacturing plant, which court deemed to plead no more than mismanagement); *Crocs*, 774 F. Supp. 2d at 1146 (allegations involved use of "primitive Excel software" to track inventory).

Plaintiffs' attempt to distinguish *Crocs*—which, as Plaintiffs concede, found that the claims at issue "amounted to mismanagement" and thus were inactionable (Objs. 13–14)—fares no better.  That this finding was in the context of the court's analysis of scienter does not restrict the court's broad holding, or transform the allegations here into actionable claims.  *See Crocs*, 774 F. Supp. 2d at 1146–47 (collecting cases).[7]  And Plaintiffs make no meaningful attempt to distinguish *C.D.T.S.* v. *UBS AG*, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), which "found that the plaintiffs' general and conclusory allegations were 'more akin to a claim of

---

[7] Plaintiffs also criticize Magistrate Judge Shields for purportedly "cit[ing]" *Crocs* "in support of [her] statement that 'Second Circuit precedent clearly bars such business decisions from the scope of conduct that must be disclosed to avoid securities fraud liability,'" stating that, because the case "is from the District of Colorado, . . . it plainly does not demonstrate what 'Second Circuit precedent clearly bars.'"  (Objs. 13–14 (citing R&R 17).)  Plaintiffs misrepresent the R&R, which never cited *Crocs* as evidence of Second Circuit precedent.  Rather, the Magistrate Judge cited the case as one of multiple authorities supporting her correct finding that "Plaintiffs' allegations fall squarely within the scope of corporate decision-making that may be unwise, but the failure to disclose such decisions does not amount to securities fraud."  (R&R 18.)

mismanagement than of fraud,'" and therefore were inactionable as securities claims.  (Objs. 14 (quoting *C.D.T.S.*, 2013 WL 6576031, at *7).)  Plaintiffs offer no explanation as to why the mere involvement of a "rogue trader" in *C.D.T.S.* somehow limits the reach of the well-established rule that the case applied.  (*Id.*.)

*Second*, Plaintiffs contend that the Magistrate Judge "mischaracterize[ed]" their claims as a "quarrel" with Vince's purported decision to use the "beta" software rather than with the adequacy of Vince's disclosures.  (*Id.* at 12.)  But the Magistrate Judge repeatedly made clear that, regardless of whether a "beta" version was used, there simply was no duty to *disclose* that alleged use.  (*E.g.*, R&R 17 ("*According to Plaintiffs, Vince failed to disclose* its use of a so-called 'beta' version of Microsoft software . . . ." (emphasis added)); *id.* ("Plaintiffs fail to state a claim . . . because Second Circuit precedent clearly bars such business decisions from the scope of conduct that *must be disclosed* to avoid securities fraud liability." (emphasis added)).  That finding was correct, for the reasons explained above.

*Third*, Plaintiffs' cited decisions (the same as in their motion to dismiss briefing) are inapposite, as the plaintiffs in each decision *did* allege a viable disclosure claims that was not merely a mismanagement claim.  (Objs. 14–15.)  Here, Plaintiffs have *not* alleged such viable disclosure claims, as the Magistrate Judge correctly found.  Indeed, the one example that Plaintiffs give, in an attempt to show an alleged viable disclosure claim, shows no such thing.  Specifically, Plaintiffs argue that, in March 2015, Ms. Granoff stated that "[d]uring this migration, we will incur incremental transition costs as we run dual systems for a period of time to ensure a smooth migration with minimal disruption."  (*Id.* at 15.)  But, whether Vince's new ERP system used a "beta" version or not, there was nothing false or misleading about that statement.  Plaintiffs do not allege that Vince did *not* run dual systems for a period of time to

ensure a smooth migration with minimal disruption.  And their suggestion that Ms. Granoff was representing that the migration *would be* smooth with minimal disruption (*id.*) is belied by nearly every SEC filing that Vince made.  All of them cautioned, in substance, that "there can be no assurance that the transition . . . , including the completion of such transition within our expected timeline, will be successful, and problems encountered in such transition could have a material adverse effect on our business, financial condition, liquidity and results of operations." (AC ¶ 137 (quoting 3Q15 10-Q at 33) (emphasis omitted); *see also id.* ¶¶ 117 (quoting 2014 10-K at 14), 149 (quoting 2015 10-K at 11), 161 (quoting 1Q16 10-Q at 28).)

### E.    Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter

To meet their pleading burden, Plaintiffs must allege facts giving rise to a strong inference of scienter.  *See Slayton* v. *Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010).  That inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.* v. *Makor Issues & Rights Ltd.*, 551 U.S. 308, 314 (2007).  And it must be pled as to *each* defendant. *Defer LP* v. *Raymond James Fin.*, *Inc.*, 654 F. Supp. 2d 204, 216 (S.D.N.Y. 2009).  Although scienter may be alleged in one of two ways—(1) by pleading particularized facts sufficient to show a defendant's "motive and opportunity" to commit fraud; or (2) by pleading particularized facts demonstrating "strong circumstantial evidence of conscious misbehavior or recklessness," *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)—the Complaints here allege neither.

In their Objections, Plaintiffs accuse the Magistrate Judge of applying the wrong standard, arguing that "contrary to the R&R, 'knowledge' is not required" to adequately plead scienter.  (Objs. 21.)  But the Magistrate Judge did no such thing, never suggesting that scienter may be proven *only* through allegations of actual knowledge.

*First*, to the extent that the R&R addressed scienter, the Magistrate Judge simply described, accurately, the absence of any particularized allegations as to "Defendants' knowledge" of the insufficiency of the alleged product used.  (R&R 19; *see supra* § II.A.)

*Second*, although Plaintiffs make much of the fact that scienter may be pleaded by alleging "motive and opportunity" (Objs. 21–22), they make no specific objection as to that theory, stating in conclusory terms only that "Plaintiffs have adequately alleged scienter under [a] . . . motive and opportunity standard."  (*Id.* at 22.)  But it is one of the Complaints' central failings that Plaintiffs have not shown *any* motive for Defendants to have engaged in the fraud alleged; for instance, Plaintiffs do not allege that Defendants sold stock to take advantage of an artificially inflated stock price or allege any other of the usual motives to commit fraud.

*Third*, Plaintiffs also fail to show either "conscious misbehavior"—which *is* knowledge—or recklessness.  Instead, all Plaintiffs do is repeat their arguments below, pointing to allegations that "Vince executives" were "involved in the transition" and "participated in weekly meetings where discussions about the integration issues took place."  (*Id.*)  But Plaintiffs do not allege, as they must, when the meetings took place or what was said at them that purportedly put any of these unnamed executives on notice that any Company disclosure was false.  *See Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (citation omitted)); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998) (allegations that "because of defendants' . . . executive managerial positions, they had access to information" contradicting alleged misstatements were "insufficient to establish actual intent or conscious recklessness").  In a last-ditch attempt to show Defendants' purported

20

awareness of the "beta" version's insufficiency, Plaintiffs also assert, without any support or explanation, that Defendants had "the motive and the opportunity to commit fraud." (Objs. 22.) Yet one does not follow from the other—having a motive or opportunity to commit fraud (which Defendants did not) says nothing about Defendants' supposed knowledge of the insufficiency of a software product.

Plaintiffs also fail to plead corporate scienter (that is, Vince's scienter), because that "requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson*, 2020 WL 2755690, at *3 (citation omitted). Because Plaintiffs do not adequately plead scienter as to *any* Individual Defendant, they necessarily have not pleaded scienter as to the Company, either.

*Fourth*, Plaintiffs repeat their core operations argument to no avail, assuming Defendants' "personal[] involve[ment] in the transition" simply "[b]ecause Vince's entire direct-to-consumer segment depended on the performance of the ERP platform." (Objs. 22.) But the "naked assertion" that a product is "key"—as Plaintiffs argue here—cannot independently support a finding of scienter. *Jackson*, 2020 WL 2755690, at *4; *see, e.g.*, *Rockwell Med.*, 2018 WL 1725553, at *14–15. Nor can Plaintiffs' reliance on Defendants' statements during investor calls about the systems transition being a "top priority" or "top of mind." (Objs. 23 (citation omitted) (emphasis omitted).) Those statements say nothing as to Defendants' awareness of Vince's purported use of the "beta" software or that this use caused Vince problems in advance of Defendants' disclosures regarding migration issues.

*Fifth*, Plaintiffs' argument that their scienter allegations must be assessed "holistically" (*id.*) also fails, because "individually insufficient allegations do not combine to create an

inference of scienter sufficient to satisfy the PSLRA . . . . [Z]ero plus zero is zero." *In re Barrick Gold Corp. Secs. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018).[8]

*Lastly*, Plaintiffs do not make *any* scienter-related objection as to the Sun Capital Defendants, thus requiring the dismissal of those Defendants. *See, e.g.*, *Cephas*, 328 F.3d at 107.

## III.   THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED THE DISMISSAL OF PLAINTIFFS' SECTION 20(a) CLAIMS

To establish a prima facie case of control person liability under section 20(a) of the Exchange Act, "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. The Magistrate Judge thus correctly concluded that, because Plaintiffs did not adequately plead a primary violation (for all of the reasons in the R&R and discussed above), their control person claims fail, too. (R&R 19–20.)

Plaintiffs' objection that "the Sun Capital Defendants controlled and exercised substantial influence over Vince before, during, and after the IPO" (Objs. 23) is "perfunctory" and thus improper, *Allen*, 2020 WL 2537280, at *1, and, in any event, fails to address the additional, independent bases for dismissal that Defendants advanced in their motion to dismiss briefing. (*Zecher I* Br. 34–35; *Zecher I* Reply 24–25.) Indeed, Plaintiffs fail to plead facts sufficient for the required "individualized determination" as to each Defendant's control and "particular

---

[8] Plaintiffs also argue that the Magistrate Judge improperly "drew inferences" in Defendants' favor. (Objs. 19–20.) But none of the Magistrate Judge's conclusions were "inferences," much less unfair ones; they were findings supported by the disclosures and the Complaints' cited documents themselves. Courts "need not accept as true an allegation that is contradicted by documents on which the complaint relies." *Williams* v. *Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008). And, as detailed in Defendants' motion to dismiss briefing, the various articles and press releases upon which Plaintiffs rely do not support their allegations and, in fact, directly contradict them. (*See supra* § II.A.1; *Zecher I* Br. 16–17; *Zecher I* Reply 5–6.) Under the PSLRA, Plaintiffs are required to adequately allege falsity and fraud with particularity, and thus it is Plaintiffs' failing, not the Magistrate Judge's, that such well-pleaded allegations simply do not exist.

culpability," *Boguslavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998), and they identify no

"facts indicating that the controlling person knew or should have known that the primary violator

. . . was engaging in fraudulent conduct," *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *21

(S.D.N.Y. Aug. 30, 2018) (citation omitted)).

## IV. THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DENYING PLAINTIFFS LEAVE TO RE-PLEAD

The Magistrate Judge correctly recommended that the Complaints be dismissed without

leave to re-plead.  (R&R 20.)  As the Magistrate Judge observed, the Amended Complaint in

*Zecher I* was Plaintiffs' second attempt to properly plead their claims, and, given the length and

detail of that complaint, "[i]t is difficult to imagine a third pleading would in any way animate

the factual basis for the securities fraud claims sought to be alleged."  (*Id.*)  In fact, the

Complaint in *Zecher II*—filed more than eight months after the Amended Complaint in *Zecher I*,

more than two and a half years after the disclosures at issue, and with the benefit of full briefing

on Defendants' motion to dismiss in *Zecher I*—was the *third* chance for Plaintiffs' counsel.

Courts routinely deny leave to re-plead under far less generous circumstances.  *See, e.g.*, *Morgan*

*Art Found. Ltd.* v. *McKenzie*, 2019 WL 2725625, at *20 (S.D.N.Y. July 1, 2019) (dismissing

with prejudice where party "filed its third amended complaint after receiving a pre-motion letter

. . . outlining the deficiencies in its second amended complaint, but . . . did not cure the

deficiencies"); *BankUnited, N.A.* v. *Merritt Envt'l Consulting Corp.*, 360 F. Supp. 3d 172, 191–

92 (S.D.N.Y. 2018) (denying leave to amend where plaintiff already amended once, after having

the benefit of pre-motion letters and court's observations during pre-motion conference).

Moreover, Plaintiffs did not explain in their oppositions to the motions to dismiss—and do not

explain in their Objections—how they would attempt to cure the deficiencies in their pleadings.

This, too, justifies denying leave to re-plead.  *Hayden* v. *County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

Plaintiffs' reliance on *Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015) (Objs. 24), is unavailing.  There, the district court "presented Plaintiffs with a Hobson's choice" of either agreeing to re-plead before a motion to dismiss was briefed and decided or to forfeit the opportunity to re-plead.  *Id.* at 190.  Plaintiffs here have been put to no such choice, but rather have had three chances to plead their claims.  "Three bites at the apple is enough."  *Salinger* v. *Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997).

## V.   PLAINTIFFS' CLAIMS FAIL FOR THE ADDITIONAL REASONS SET OUT IN DEFENDANTS' MOTIONS TO DISMISS

For the reasons stated, the Magistrate Judge's R&R is correct across the board and fully supports dismissal of Plaintiffs' claims.  But there are additional reasons for dismissing Plaintiffs' claims that Defendants raised in their motions to dismiss that the Magistrate Judge did not address and to which Plaintiffs presented no meaningful responses in their oppositions to the motions.  Those arguments are set out more fully in Defendants' motions to dismiss and reply papers and are summarized here.

*First*, the Complaints in both actions fail to satisfy the pleading requirements of Rules 8 and 9(b) or the PSLRA by failing to identify, as they must under established law, the amounts or timing of Plaintiffs' purported purchase(s) of Vince stock.  (*Zecher I* Br. 11–12; *Zecher I* Reply 2–3; *Zecher II* Br. 8–10); *see also Dexia SA/NV* v. *Deutsche Bank AG*, 2013 WL 98063, at *5 (S.D.N.Y. Jan. 4, 2013); *Barr* v. *McGraw-Hill, Inc.*, 710 F. Supp. 95, 97 (S.D.N.Y. 1989).

*Second*, there are two additional reasons warranting dismissal that are unique to *Zecher II*.  First, the *Zecher II* Complaint is clearly time-barred because, as the Court observed during the November 26, 2019 status conference, it is an attempted "end-run" around the

governing two-year statute of limitations.  28 U.S.C. § 1658; *see also Friedman* v. *JP Morgan Chase & Co.*, 2016 WL 2903273, at *7 (S.D.N.Y. May 18, 2016) (holding that section 1658 applies to section 20(a) claims).  Alfred Zecher's allegations conclusively show that a reasonable diligent plaintiff had sufficient information to plead purported federal securities law claims by April 28, 2017, by which time Vince made all of the alleged corrective disclosures regarding its system transition issues.  *See City of Pontiac Gen. Emps. Ret. Sys.* v. *MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011).  Yet Alfred Zecher did not file his Complaint until October 4, 2019, some two and half years after the April 2017 disclosures, about thirteen months after *Zecher I* was filed, around eight months after the nearly identical *Zecher I* AC was filed, and almost three months after the *Zecher I* motion to dismiss was fully submitted.  That is fatal to his claims.  (*Zecher II* Br. 6–8; *Zecher II* Reply 2–11.)

*Third*, the Plaintiff in *Zecher II* does not have standing to sue on behalf of the alleged "entities and accounts that he owns, controls and/or for which he has received assignment to prosecute [his] claims," which he purports to represent.  (Compl. ¶ 25.)  Because standing is limited to actual purchasers and sellers of Vince securities, *Blue Chip Stamps* v. *Manon Drug Stores*, 421 U.S. 723, 731–32 (1975), only the non-party entities or accounts have standing to sue, not Alfred Zecher.  *Melcher* v. *Fried*, 2018 WL 2411747, at *3 (S.D. Cal. May 29, 2018); (*Zecher II* Br. 10–11.)  Alfred Zecher conceded the point by failing to respond in his brief in opposition to Defendants' motion.

## CONCLUSION

For the reasons discussed above, the Magistrate Judge's R&R should be adopted in its entirety, and the *Zecher I* Amended Complaint and *Zecher II* Complaint both should be dismissed with prejudice, without leave to re-plead.

25

Dated: July 2, 2020                     Respectfully submitted,

                                        PAUL, WEISS, RIFKIND,
                                            WHARTON & GARRISON LLP

                                        By:_____/s/ Gregory F. Laufer_____
                                        Daniel J. Kramer
                                        Gregory F. Laufer
                                        Robert N. Kravitz
                                        1285 Avenue of the Americas
                                        New York, NY 10019-6064
                                         (212) 373-3000
                                        dkramer@paulweiss.com
                                        glaufer@paulweiss.com
                                        rkravitz@paulweiss.com

                                        *Attorneys for Defendants*